## CHRISTIAN BITNER v. ANDREW BROUGH.

11 127
156 348,

11 127
e 30 SC ³131
30 SC ³132

11 127
31 SC ³262

1. Where the contingent right of the vendor's wife to dower is known to the vendee of land under articles for a deed clear of encumbrances, and he covenants to pay her for signing the deed, he does not thereby take the risk of her not signing on himself.

2. Nor will it excuse the vendor, so far as the vendee's right of action is involved, that he offered to comply with his covenant, and to make such title as he was able to make without his wife's consent.

3. Where the vendor, without fraud on his part, is incompetent to make out a title, the vendee is not entitled to damages for the loss of his bargain, beyond the money paid with interest and expenses, although the completion of the bargain might have been profitable to him. But where the vendor is guilty of

collusion, tort, artifice, and fraud, to escape from a bad bargain, the vendee is entitled, not only to compensatory damages, but to damages arising from the loss of the bargain, or the money he might have derived from its completion.

ERROR to the Common Pleas of Franklin.

*June* 14. This was an action of covenant brought by Andrew Brough against Christian Bitner, on articles of agreement for the purchase and sale of land.

Bitner covenanted to sell and convey to Brough for $9,000, of which $5,000 was payable on 1st April, 1847, "when a good and sufficient deed clear of encumbrances was to be made and delivered," and the residue was to be paid in five equal annual instalments.

It was also agreed that Bitner's wife should get $5 for signing the deed. And it was further agreed that Brough should apply the hand money and the "gales" to pay off the judgments against Bitner so far as the same would reach; but if Bitner should procure the premises to be released from all the said liens, then Brough should give judgment-notes for the "gales."

Before the parties entered into the articles, they took the precaution to send a messenger to ascertain from Bitner's wife (who was from home) whether she would agree to join in the conveyance; and they were informed that she was willing, if they would pay her $5.

It is conceived that this case will be better understood upon an exhibition of the testimony given below, than from any mere abstract of it. The testimony, however, has been reduced within the narrowest space consistent with intelligibility.

The plaintiff, after putting in evidence the articles of agreement, produced the following witnesses :—

Jacob Harkelrode, sworn.—Shortly before 1st April, 1847, Peter and Andrew Brough asked me to go to Christian Bitner's. Andrew Brough, Solomon Miller, and myself went. No one was there but Mrs. Bitner. Andrew Brough told Mrs. Bitner what he came there for—told her he came with a load of goods, and wanted to put them in one of the houses on the premises that he had bought. Bitner and Miller came in just after this conversation. Brough then told Bitner his errand. He said he came with a load of chairs or goods, and wanted leave to put them in one of the houses he had bought—and that he had a greater part of the hand money. Bitner then said, that matters did not stand as they did before—that his woman was opposed to signing the deed; and she said, in his presence there, that she would not. Bitner said he was satisfied to his (Brough) having the property or deed—satis-

fied as well as ever he was, if his woman would sign the deed. Then Brough said he was coming by 1st April, and would look for the property according to their article. Brough and I were about starting. I cannot say whether Bitner said in my presence or whether Miller told me—I think he said in the house he would consult with his family that night. Brough and I left. Then Miller came and said that Bitner charged us to come back next morning. Bitner and wife there. Andrew Brough asked him how things were. Said old things over again as on day before. Mr. Bitner said he was satisfied—but his wife was not satisfied to sign the deed. He was satisfied that they should have the property. Brough said he was satisfied to take his deed without her signature, if he would give indemnifying bond. Bitner said he could not do that—it would raise great confusion in his family. Then we were about leaving, and Bitner said his son Henry had gone to Chambersburg, and we should go in and see him. Mrs. Bitner said it would be like some more of his tricks, when bond of indemnity proposed.

Then we left—came to Chambersburg—met Henry Bitner at F. Smith's office. Henry said he would say all he had to say: he would rent Brough the farm, as his mother would not sign the deed—and said how he would rent. Brough said he did not come to rent—he wanted to fulfil his contract. This was not long before 1st April—about a week before.

On cross-examination.—Mrs. Bitner was dissatisfied about bond of indemnity. She was in a bad humour.

Solomon Miller, sworn.—We went to Bitner's eight or ten days before 1st April. Nobody in the room but the old woman, Brough asked for old man. I went out into the kitchen. Bitner was there. I told him Brough was there. He asked me what I would do in his place. I said I would stick to my bargain, if I sold $1,000 too low. He said he was sorry—did not know what to do. I said I would call Brough out. He said he was not afraid to talk to Brough. He said he believed he would give up the land. Went into the room. Said same things there. The wife said when they bought they did not get in before 1st April, and that Brough should not—that they had rented away the houses, and that Brough could not put in anything till their time was out. Andrew Brough said he was prepared with the hand money—that he had taken him up at his offer, &c. Something said about a bond of indemnity. Bitner said if he would do that he would soon be by himself. Brough said he was satisfied by clearing him of the widow—after the rest

went out, Bitner told me to tell Brough to come back and try and settle it with Henry. He said he was sorry. Went back next morning. Henry was gone to town. Bitner appeared anxious to have it settled, and said it could be settled. Wanted me to take Brough to Henry, in town. We came to town. Met Henry at Smith's office. Henry offered to rent Brough the place. Brough said he did not come to rent, but to comply with his bargain. Henry was not married at that time.

Cross-examined.—When Bitner said he would give the land, he said if the wife would sign the deed. Mrs. Bitner said she would not sign it. Said she would sign it if Bitner would get right. When Brough said he wanted to put goods, &c., Mrs. Bitner said they had rented the houses, and could not get possession. Said it before Bitner came, and said it afterwards.

Samuel Radebaugh, sworn.—On the 15th March, went out with Peter Brough to Bitner's. He was there by himself. Peter Brough said he came about the deed—he had heard his wife would not sign it. He said he could not help that. She was not in. Mr. Brough sent out for her. She came in. He asked her if she said she would not sign it. I talked to her in Dutch—told her there would be trouble and costs. She said she did not want him to buy it, and she would have nothing to do with selling it. Mr. Brough and Henry Bitner were talking, and the old man said he had never said that they should not have the place—that he always said they should have it. Then Bitner said, maybe they would give more money; but, whether for the place, or for her to sign the deed, I don't recollect. But he said something of money. Bitner said he never had said that Brough should not have it.

The tender of the hand money ($5,000), and judgment-bonds for the residue, in accordance with agreement, on the 1st April, at Bitner's house, was admitted.

Daniel Reisher sworn.—On 1st April, went with Brough to Bitner's. Bitner offered a deed with his own name. Brough said he would not take it. Bitner said he could do nothing more. Peter Brough said he could, and then told him that if he would give him a bond of indemnity against his wife, he would take it. Bitner said he would not do this. He said his family would leave him if he would.

Cross-examined.—Mrs. Bitner would not come into the room. Mr. Davidson and Andrew Brough went out with myself to offer her the money—did offer it to her. She was in a bad humour.

She said she did not want any money. She said she would not sign the deed.

Andrew Davidson, sworn.—Was there when Brough made the tender. Bitner said he had done all he could do—he had signed the deed. Brough said if he would give him bonds of indemnity, he would take the deed without the wife's signature. Bitner said he could not do it—his family would all leave him. Mrs. Bitner was in kitchen. Brough tendered her $5. She said she would not sign the deed.

Other witnesses testified, that Andrew Brough was a farmer, and lived thirty-five miles from Chambersburg, in Adams county; that he came to the property on the 1st April, with his family, wagons, and furniture. With this the plaintiff rested.

The defendant gave in evidence the deed which he tendered to Brough on the 1st April, which was executed and acknowledged only by himself. It contained a general warranty.

The power of attorney from Andrew to Peter Brough, of 27th March, 1847, to make payment or tender to Bitner, &c. &c.

The defendant's counsel submitted among others, the following points:

1st.—That the contingent dower right of defendant's wife in the land, being known to the plaintiff when he bargained for the land, and he having covenanted to pay her five dollars for signing the deed, he took the risk of her signing or not signing upon himself; and if the defendant was willing and offered to comply with his covenants, and to make a title, so far as he was able to do so without the wife's consent, the plaintiff cannot recover in this action.

4th.—That in the absence of any proof of the value of the land, the price agreed on between the parties must be presumed to be the real value; and there being no proof of any rise of value from the time of the contract till the 1st of April, there can be nothing but nominal damages recovered for the loss of the bargain.

5th.—That if Christian Bitner was willing and offered to convey the title according to the terms of the contract, so far as could be done without the wife's consent, no damages can be recovered for the loss of the bargain.

The plaintiff's counsel submitted this point: that if the jury believe that the defendant acted from bad faith, deception or fraud, they may find exemplary or vindictive damages against him.

This point the court answered in the negative.

The court (BLACK, President) answered the defendant's points, and charged the jury as follows:—

" The defendant covenanted to make the plaintiff a good and sufficient deed free of encumbrances, &c. The money and bonds which the plaintiff was to give for the land were tendered to the defendant on the day fixed by the agreement, but defendant refused to make such a deed as he had promised. This suit is brought to recover damages for the breach of the covenant.

" Both parties here acted under the impression apparently that Mrs. Bitner would sign the deed. But though she consented when the agreement was made, yet if she repented she could not be forced to join in the conveyance. Bitner covenanted that he would make a deed free of all encumbrances. If his wife refused to sign the deed, it left the land subject to her right of dower, and Bitner was unable to make such a deed as he agreed to make. This is the same as if he had been unable to make the deed for any other reason. The plaintiff may recover such damages as he has suffered. If there was any collusion between Bitner and his wife, by which it was understood, that she should refuse to sign the deed, and by that means get him off from his contract, their purpose was unjust and unfair. The intimate relation between husband and wife, and their community of interest, make the temptation to such a conspiracy so strong, and the execution of it so easy, that it ought to be watched as a thing at least possible in a case like this. I do not mean to say there is any evidence of it here, and you are not to suppose it without evidence.

"It is for you to determine what, under all the circumstances, ought to be the amount of the damages. You ought to see that Bitner makes nothing by violating his agreement, and that Brough loses nothing. It must be remembered, however, that you cannot give vindictive or exemplary damages. Neither will the law allow you to swell the verdict by counting all the special or consequential injury, which the plaintiff may have suffered. Your calculation must be confined to the damages necessarily and directly arising out of the breach of the covenant.

" Mr. Brough had a right to rely on the contract down to the day it was to be executed. But if he was warned in good faith, and in due time, that he need not come on either to take possession or to tender the money, it may reduce the damages. After Mr. Brough had received such notice (if he did receive it), he had no right to expend money in preparations to get possession of the land, for the purpose of increasing the damages. But the notice given was so late that most of Brough's preparations must have

been made before.  You will give this notice the weight which you think it entitled to.

"Doubtless the agreement was fairly made.  No one alleges that either party took the slightest advantage of the other.  The presumption is that Brough agreed to pay for the land its full value.  This is the presumption arising out of the contract itself, considered apart from all the other evidence.  I cannot say, however, that there is no spark of evidence in the cause having a tendency to show either that the land had risen in value, or was worth more at the date of the agreement, than the sum contracted for. The refusal of Bitner to carry out his contract—his conversation with Miller in the kitchen about what should be done in case of land having been sold too low—his suggestion that perhaps Brough would give more money in order to get the deed—these facts are some evidence (you will say how much) that Bitner expected that he himself would gain, and that Brough would lose, by the rescission of the contract.

" The wife's refusal to sign the deed is not a defence to Bitner for refusing the conveyance he had covenanted for.

" The only damages the law implies are indeed nominal, as the defendant in his 6th point asserts.  But you will give the plaintiff a verdict for all the damages which are proved, besides those which the law implies, keeping yourselves, however, within the rules I have already given you."

To this charge the defendant excepted.  The verdict was for the plaintiff—$1000 damages.

In this court the plaintiff in error made the following assignment of errors:—

1.—The court erred in not fully answering the defendant's 5th point; or, if answered at all, answering it in the negative.

2.—In instructing the jury in different parts of the charge: that " the wife's refusal to sign the deed is not a defence to Bitner for refusing the conveyance he had covenanted for;" that his inability to make the deed on account of his wife's refusal to join in it, "is the same as if he had been unable for any other reason;" and then submitting the question to the jury whether the land had risen in value or was worth more, &c.  Thus negativing the defendant's 5th point.

3.—There is error in the application of the same remarks to the defendant's 1st point, so far as they are an answer to it; and in answering that point substantially in the negative.

4.—In the answer to the defendant's 4th point: 1st, in suggest-

M

ing that there was evidence either of a rise in value of the land, or
that it was worth more than the price agreed on at the time of the
contract; and leaving that question to the jury without *sufficient
testimony.*  The enumerated circumstances were, besides, incor-
rectly stated in point of fact, and calculated to mislead the jury.
2d. If the evidence was sufficient to justify the jury in drawing the
conclusion that the land was worth more, still, there was error in
submitting it to the jury, *without any evidence, how much more* it
was worth; and in giving them no instruction limiting the amount
of damages, for the loss of the bargain, to the actual rise or differ-
ence in value.

*Bard,* for the plaintiff in error.—1 and 2. Where the vendor of an
estate is, without fraud on his part, incompetent to make out a title,
the purchaser is not entitled to recover damages for the loss of his
bargain, beyond the money paid, with interest and expenses;
although it appear that a considerable profit might have been de-
rived by him from the completion of the purchase.   Chitty on Con-
tracts, 311 (Springfield ed. 1844), citing Flureau *v.* Thornhill, 2
Black. R. 1078; Bratt *v.* Ellis, and Jones *v.* Dyke, Sugden on
Vendors, Appendix Nos. 7 and 8;. Sugden on Vendors, 252, 253,
280, 281, top page—208, 235, &c., marg. page; Brookfield ed.
1836.   Same general rule laid down, citing same authorities, Id.
282: Walker *v.* Moore, 10 Barn. & Cress. 416 (21 Eng. C. L. R.
100); Hicks *v.* Minturn, Johns. 550 ; Baldwin *v.* Munn, 2 Wend.
399.   Equity in such cases would not decree specific performance.
See Sugd. on Vend. 252.   In the present case equity would not
decree specific performance : Clark *v.* Sevier, 7 Watts, 107, 112.

There are other cases where equity will not enforce, as where it
would be *against the policy of the law,* or *greatly prejudicial* to the
vendor : Henderson *v.* Hays, 2 Watts, 148.

The rule would seem to be in all such cases that nothing but
compensatory damages may be recovered.   Since there would be
no meaning in protecting against the consequences of an improvi-
dent bargain, if it could be made good against him in another shape.

3. If the purchaser, before executing the articles, has notice of an
encumbrance which is *contingent,* and it is agreed that the vendor
shall covenant against encumbrances, the purchaser has chosen his
remedy, and equity will not assist him: Sugd. 628 (554 marg.)

A covenant " to make a clear deed" satisfied by the delivery of
a deed for such title as vendor hath, where the defect is equally
well known by both parties : Rohr *v.* Kindt, 3 W. & S. 563. ·

Vendee, however, has his election to take or not to take: Id. 566, and cases there cited: Sugden on Vend. 253, top page.

The whole instrument must be considered, so as to give effect to all its parts. It is clear that the parties in this case did not intend that the land should be conveyed absolutely clear of *all* encumbrances; for provision is made for paying the future instalments, *after the deed was to be delivered,* upon judgments against the vendor.

The understanding must have been that the title should be free from all encumbrances except those provided against; or that the deed should covenant against them. See Withers *v.* Baird, 7 Watts, 227.

4. 1st branch: Nieman *v.* Ward, 1 W. & S. 68; Parker *v.* Donaldson, 6 W. & S. 132; Gilchrist *v.* Rogers, Id. 488. The facts misstated, and from which the jury was left to draw an undue inference, were that Bitner "*had refused,*" &c., that his conversation with Miller was about "what would be done in case of land *being sold too low,*" &c.

2d branch: Rohr *v.* Kindt, 3 W. & S. 566; Cadbury *v.* Nolen, 5 Barr, 320.

*Smith* and *M'Lanahan,* contra.—Although a court of chancery will not interpose its powers for a specific performance, it leaves the party liable, at law, to all the damages. Judge Story assigns as a reason for not interposing, that a full compensation may generally be obtained by returning the money with interest and damages: 2 Story's Equity, § 732. Lord Eldon, in Emery *v.* Wase, says, "why is not the party to take his chance of damages against the husband," Ib. page 46, in note. There is a great difference between enforcing a contract against the policy of the law, and sanctioning the violation of congenial duties; and leaving all parties free to act upon such exigencies as may arise, according to their own sense of the necessities of the case: 2 Story's Eq. § 734.

Courts of law afford no more protection to wives from the consequences of such contracts, than from other contracts. The breach of any contract may affect the interests of the wife.

Where goods are sold at auction, and the vendee refuses to take them, the measure of damages, generally, is the difference between the price agreed upon, and the value at the time of such refusal: Girard *v.* Taggart, 5 S. & R. 19.

The value of the articles at or about the time it is to be delivered, is the measure of damages in a suit by a vendee against the

vendor for a breach of a contract of sale and delivery of personal chattels: Smethurst *v.* Woolston, 5 W. & S. 106.

Damages may be recovered for the loss sustained in consequence of a failure to complete the contract, even although the defendant acted *bonâ fide*, and is unable to complete the contract on account of the default of another: 2 Stark. Ev. 866; Sugden's L. of V., 241.

On a mere verbal contract for sale of land, the vendor may recover the difference between the value of the property at the time of the refusal, and the sum agreed on as the price: Ellet *v.* Paxon, 2 W. & S. 418.

According to this principle, Bitner, if the land had fallen in value, might have, in case of default of Brough, recovered the difference between the price agreed on, and the price at the time of default. This recovery might have operated to the prejudice of Brough's wife; might have taken *his* land. If the land had fallen, Mrs. Bitner would have signed the deed. If the land rose in value, Brough is entitled to recover damages accordingly. Such latter recovery is not more injurious to the rights of Mrs. Bitner, than the former recovery would have been to the rights of Mrs. Brough. In either case, their dower rights might be indirectly affected.

The policy of our laws is to facilitate the transfer of real estate, not to clog it. If the wife could, without any danger to the husband, defeat his contract for the sale of land, it would be done in every instance where there would be a rise in the property, or where it would be his intent to defeat it. It would open a door for fraud and deception not easily detected.

The relation of buyer and seller is not a confidential one; and each party is supposed to judge of his own ability to perform his part for himself. In an action for breach of a contract, the declarations of the plaintiff, that he knew at the time of making it, that the article contracted for could not be procured, cannot be given in evidence in mitigation of damages: Myers *v.* Drake, 10 W. 110. 2 Greenleaf, 22; Hopkins *v.* Gargebrook, 11 E. C. L. R. 100.

The opinion of this court was delivered by

ROGERS, J.—It is scarcely an open question that, upon the refusal or inability of a vendor to execute a deed clear of all encumbrances, including the wife's dower, the vendee has a right of action to recover at least nominal, or, as the case may be, compensatory damages. Nor will it alter the case, that the contingent right of

dower was known to the vendee when he bargained for the land, and that, as here, he covenanted to pay her for signing the deed. This cannot, as has been contended, have the effect of making him take the risk on himself. Nor does it excuse the vendor, so far as the right of action is involved, that he was willing, and offered to comply with his covenant, and to make title as far as he was able, without his wife's consent. The defendant covenants to make the title, free from all encumbrances, and this covenant is immediately broken, on the refusal of the wife, from whatever cause, to become a party to the conveyance. Damages may be recovered for the loss sustained by reason of his failure to comply, arise from what cause it may, even though he may have failed, *bonâ fide*, and is unable to complete his contract on account of the default of another: 2 Stark. Ev. 866; Jur. L. R. 241. And it is no excuse, that his inability may have arisen from the refusal of the wife to sign the deed, although it may inevitably affect her interests. Courts of law can afford no more protection to wives, than from the violation of other agreements. It would be attended with the most pernicious consequences, if the doctrine should receive the sanction of the court, that the refusal of the wife would free the husband from all damages arising from the violation of his covenant. The rule is, and it is applicable to the case of the wife, as to the other cases, that when the husband, who is the vendor, is willing to perform his part of the contract, with good faith, as far as he can, he is liable in some cases to nominal, and in others to compensatory, damages for the loss of the bargain. When, however, he acts in bad faith, the rule is in some respects otherwise, as will be hereafter shown.

On the facts presented here, the question, it is plain, is not whether the plaintiff can sustain an action, for of that no reasonable doubt can be entertained; but what is the amount of the plaintiff's damages, and by what rule they are to be estimated and assessed? Is he entitled to compensatory damages, or, in addition to this, is he to be paid for the loss of his bargain? The court very properly instructed the jury, that their calculations must be confined to the damages necessarily and directly arising out of the breach of the covenant. That Brough was injured by the refusal of Bitner to comply with his agreement, is too plain to admit of controversy. Brough, after he made his contract, returned home, sold his own farm to raise the funds to pay Bitner, made arrangements to remove from Adams county, his place of residence, to Franklin county, and certainly did remove, with his family, his stock, and

farm wagon-loads of personal property. His removal took place upwards of five months after the contract, and, up to that time, he was ignorant of any intention of Bitner to refuse to perform his agreement, or of any unwillingness of the wife to sign the deed. That the plaintiff then received serious injury, and great inconvenience, from the conduct of the defendant, is too plain to admit of argument. The covenant was broken by the defendant's refusal to comply with the contract, for Brough was not bound to receive a deed, even with general warranty, unless the wife joined in the conveyance, extinguishing her contingent interest. The plaintiff offered (which was more than he was bound to do), to accept the deed without the signature of the wife, provided the defendant would give him a bond of indemnity against her dower. Had Bitner made the same offer, it would have given some colour to his conduct. This offer he refused, saying he would not do that; it would cause great confusion in his family; and that, if he would do that, he would soon be by himself; are evidence, as is contended, of bad faith on his part. This reasonable proposition being rejected, and it being a case where a court of equity, inasmuch as the wife's refusal to execute the deed (Clark v. Sevier, 7 W. 107, 112) would not decree a specific performance, the only remedy is at law, to recover damages, to which he is unquestionably entitled, whether the defendant acted with good faith, or in collusion with his wife, as has been alleged with some show of reason, or, in combination with her and his son Henry. On this point of the case, no exception can be justly taken to the charge. The court say to the jury: "It is for you to determine what, under all the circumstances, ought to be the amount of damages. You ought to see, that Bitner makes nothing by the violation of his agreement, and that Brough loses nothing. It must be remembered, however, that you cannot give vindictive, or exemplary damages. Neither will the law allow you to swell the verdict, by counting all the special or consequential injury which the plaintiff may have suffered. Your calculation must be confined to the damages necessarily and directly arising out of the breach of the covenant." In this view, and in this connexion, the court were correct in remarking that it is the same as if he had been unable to make the deed from any other reason. For, whether he is unable to fulfil his agreement, by reason of the refusal of the wife, or from any other cause, over which he has no control, can make no difference. Having broken his covenant, he must make good the injury to the plaintiff, either in the shape of compensatory, or, at least, nominal damages.

But the burthen of the defendant's complaint is the disposition of his fifth point: "That if Christian Bitner was willing and offered to convey the title, according to the terms of the contract, so far as could be done without the wife's consent, no damages can be recovered for the loss of the bargain." If the point had been put in a more definite shape, and had read, that if Bitner was willing and offered in *good faith* to convey the title, &c., he would doubtless have been entitled to an affirmative answer. But it is worded so obscurely to attain that which is now allowed to be the object of the point, that it was calculated, and, as we think on a review of the case, did mislead the judge. A proposition which the court is called to answer, must be plain, definite, precise; if there is any obscurity in it, it must operate adversely to the party who proposed it. In all fairness this must be the rule.

On the head of damages arising from the loss of the bargain, the distinction is, whether the vendor acts with good or bad faith. When the vendor of an estate is, *without fraud on his part*, incompetent to make out a title, the purchaser is not entitled to recover damages for the loss of his bargain, beyond the money paid, with interest and expenses; although it appears that a considerable profit might have been derived by him from the completion of the purchase. This is a reasonable principle laid down in all the text books, and is abundantly supported by authority: Chitty on C. 311; Sug. on Vendors, 2 Bl. R. 1078; and the cases cited. But the rule only holds good when the vendor acts with good faith; where he is guilty of collusion, tort, artifice, and fraud, to escape from the effects of a bad bargain, it is otherwise. In that case the vendee is entitled not only to compensatory damages, but to damages arising from the loss of the bargain, or the money he might have derived from the completion of the contract. Thus, if the refusal of the wife to execute the deed is a mere pretext, the result of collusion at the instigation of the husband to rid himself of an improvident contract, the price having risen in the intermediate time between making the agreement and its completion, he must respond for the difference in value. Justice and good policy require this to be the rule, for otherwise the advantage would be entirely on the side of a vendor, who would be often under great temptation to violate his contract, when the difference in price was so great as to excite his cupidity. A party must not be allowed to gain by a violation of his engagement. The difference is a plain and palpable one, and consists in the *bona fides* or *mala fides* of the transaction; from whatever cause the refusal to comply may

proceed, it is *that* which determines the question whether the vendee can recover for the loss of his bargain. But the attention of the court was not drawn to this distinction. If it had been, we cannot doubt it would have received a distinct and correct answer. So far as the charge goes on this head, the defendant has no reason to complain. The court say: "If there was any collusion between Bitner and his wife, by which it was understood that she should refuse to sign the deed, and by that means to get him off from his contract, their purpose was unjust and unfair. The intimate relation between husband and wife, and their community of interest, make the temptation to such a conspiracy so strong, and the execution of it so easy, that it ought to be watched as a thing at least possible in a case like this." He says, "he does not mean to say that there is any evidence of it here, and you are not to suppose it without evidence." An attentive examination has led me to the conclusion, that the circumstances described in evidence, would have justified a much more decided expression of opinion that there was a combination among the different members of the family, to rid themselves of an inconvenient bargain, which they were unwilling to fulfil, for the only reason that the property had risen in value, and in their estimation had been sold for an inadequate price. So far from there being reasonable ground of exception to the charge, the learned judge has evinced uncommon anxiety to confine the verdict of the jury within its legitimate bounds. We see nothing wrong, as the defendant contends, in suggesting that there was evidence of a rise in the value of the land, or that it was worth more than the price agreed on at the time of the contract. That there was evidence tending to that point cannot be doubted: its sufficiency they were bound to leave to the jury. The court with great propriety remark, "that the refusal of Bitner to carry out his contract—his conversation with Miller in the kitchen, about what should be done in case of land having been sold too low,—his suggestion that perhaps Brough would give more money in order to get the deed,—these facts are some evidence (the jury would say how much) that Bitner expected that he himself would gain, and that Brough would lose by a rescission of the contract." We do not perceive much force in the exception that if the evidence was sufficient to justify the jury in drawing the conclusion that the land was worth more, still there was error in submitting it to the jury, without any evidence how much more it was worth; again in giving them no instruction limiting the amount of

damages, for the loss of the bargain, to the actual rise, or difference of value. Positive evidence is not required, nor can it always be given, as to difference in value in any two given spaces of time. Something must be left to the discretion and good sense of the jury, subject to the control of the court in case of mistake, on a motion for a new trial. Besides, there was evidence, slight to be sure, but still some evidence, from which the jury might with reason infer that in the opinion of the defendant at least, the rise in value was in and about the sum of one thousand dollars; the amount of the verdict. That the court omitted to give an instruction limiting the amount of damages, is not attributable to them as a fault; for if the defendant wished the jury to be so instructed, it was his duty to call the attention of the court to it by special prayer for direction. The court may, and often does omit a direction, which in one aspect of the case would be useful to the party, but that is no reason for reversing the judgment; if we were to subject a judge to such an ordeal, few judgments would stand the test of legal criticism.

Judgment affirmed.