421 A.2d 315

**Robert B. WEIR and Irene B. Weir, his wife,**

v.

**Edward RAHON and Elsie Rahon, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed Aug. 8, 1980.

510

John P. Liekar, Canonsburg, for appellants.

Sanford S. Finder, Washington, for appellees.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in its determination of the amount of damages to be awarded to appellees for breach of an oral contract to convey land. For the reasons which follow, we modify the order of the court below.

In April of 1977, plaintiffs–appellees entered into an oral contract to purchase a parcel of land in a development known as Western Ranchette from defendant–appellant Elsie Rahon. At that time, plaintiffs believed that the property was owned by Elsie Rahon and her sister. In fact, however, the property was owned by Elsie Rahon and her husband, defendant Edward Rahon, as tenants by the entireties. Plaintiffs then entered into a real estate listing agreement for the sale of their home with Koval Real Estate

Agency. Elsie Rahon signed the agreement as an agent of Koval. The agreement stated that the sale of plaintiffs' home was contingent upon their purchase of the Western Ranchette property. Plaintiffs planned to have a house built on the Western Ranchette property and to move there upon its completion. Subsequently, Elsie Rahon's agency obtained a buyer for plaintiffs' home, and the closing was held on December 2, 1977. Although plaintiffs wanted to have the Western Ranchette closing at that time, Elsie Rahon told them that, for income tax purposes, she preferred to delay the closing until the beginning of 1978. On January 29, 1978, Elsie Rahon mailed an agreement of sale for the Western Ranchette property to plaintiffs. The agreement provided that plaintiffs would pay $2,000.00 before the closing and $10,000.00 upon the delivery of the deed. The agreement named plaintiffs as the buyers and both defendants as the sellers. Defendants, however, did not sign the agreement. On February 17, 1978, plaintiffs mailed Elsie Rahon a $2,000.00 check. Three days later, Elsie Rahon returned the check to plaintiffs by mail and stated in an accompanying letter several reasons why she would not sell the property to them: (1) because she had not heard from plaintiffs after sending the agreement of sale, she assumed that they no longer wanted to buy the property; (2) because plaintiffs' check would not clear the bank until after the closing date of February 20, 1978,[1] plaintiffs had failed to comply with the provision in the agreement requiring the $2,000.00 payment to be made before closing; and (3) because plaintiffs did not timely tender the payment, she signed an agreement to sell the property to another buyer.[2]

On April 21, 1978, plaintiffs filed a complaint in equity seeking specific performance of the agreement to sell the Western Ranchette property and such other relief as the court might deem appropriate. In their answer to the

1. Although the parties have treated February 20, 1978, as the closing date, we note that the date in the agreement of sale is February 20, 1979.

2. At trial, Elsie Rahon testified that although another buyer had agreed to buy the property, no agreement had been signed.

complaint, defendants raised as new matter the defense of the statute of frauds, stating that no writing or memorandum had been signed by defendants and that the agreement had not been performed in whole or in part. On November 7, 1978, following a hearing, the lower court entered an order denying specific performance on the basis of the statute of frauds and scheduling another hearing to determine whether plaintiffs were entitled to damages.

At the second hearing, defendants conceded that Elsie Rahon had breached the oral contract to sell the Western Ranchette property. Plaintiffs presented evidence that after entering into the oral contract to buy the Western Ranchette property, they paid $35.00 for digging a septic tank on the property and $40.00 to the Cecil Township Board of Supervisors for a septic tank test. Plaintiff Robert B. Weir further testified that he paid a commission of $4,100.00 to Koval Real Estate Agency for the sale of plaintiffs' home. Additionally, he testified that after he and his wife moved out of their home in December of 1977, they rented a cabin for ten months at a monthly rental of $225.00. He stated that if the sale of the Western Ranchette property had been completed, plaintiffs would have rented the cabin for only six months while their house was being built.

The lower court entered a verdict against Elsie Rahon for $5,085.00, which consisted of $75.00 for the cost of digging and testing the septic tank, $4,100.00 for the real estate commission, and $900.00 for the expenses incurred in renting the cabin for four months. Following the dismissal of their exceptions to the verdict, defendants took this appeal.

 "It is . . . elementary that, because of the provisions of the statute of frauds, an agreement for the sale of land cannot be specifically enforced unless in writing signed by the parties to be charged or their agents thereunto lawfully authorized by writing . . . ." *Polka v. May*, 383 Pa. 80, 82, 118 A.2d 154, 155 (1955). Our statute of frauds, however, has been construed as permitting recovery of damages for breach of an oral agreement to sell land. *See, e. g., Polka v. May, supra; Hertzog v. Hertzog's Administrator*, 34

Pa. 418 (1859); *Immel v. Herb*, 43 Pa.Super. 111 (1910); *Stephens v. Barnes*, 30 Pa.Super. 127 (1906); *Swayne v. Swayne*, 19 Pa.Super. 160 (1902). Generally, the measure of damages in such a case is "the money that was paid on account of the purchase and the expenses incurred on the faith of the contract." *Polka v. May, supra*, 383 Pa. at 84, 118 A.2d at 156. *See also Corace v. Balint*, 418 Pa. 262, 210 A.2d 882 (1955); *McCafferty v. Griswold*, 99 Pa. 270 (1881); *Meason v. Kaine*, 67 Pa. 126 (1870). Where the oral agreement has been obtained by fraud, however, the buyer "may recover as damages the loss of his bargain . . . ." *Seidlek v. Bradley*, 293 Pa. 379, 383, 142 A. 914, 915 (1928). Such fraud "must be actual fraud that reaches back to the original contract." *Id.*, 293 Pa. at 382, 142 A. at 915. *See also Rineer v. Collins*, 156 Pa. 342, 352, 27 A. 28 (1893) ("According to all authorities, the fraud necessary to entitle the vendee to recover must be such as inheres in the original agreement. A subsequent fraudulent purpose is not enough.").

In the instant case, defendants argue that plaintiffs did not prove that Elsie Rahon committed fraud at the inception of the oral contract. We agree. The only indication of fraud at that time was the failure of Elsie Rahon to tell plaintiffs that the property was owned by her and her husband. There was no evidence, however, that Elsie Rahon intended to mislead plaintiffs. Moreover, there was no evidence that Elsie Rahon planned at that time not to sell the property to plaintiffs. Her later refusal to sell the property to plaintiffs is insufficient to prove fraud at the time the contract was entered into. *See Rineer v. Collins, supra.*[3] Consequently, because there was no fraud in this case and Elsie Rahon returned the $2,000.00 paid by plaintiffs, plaintiffs are entitled only to damages for "the ex-

---

**3.** Although the record indicates that the lower court concluded that Elsie Rahon was guilty of fraud, it is unclear whether the court believed that the evidence established fraud at the inception of the contract. Our difficulty in determining the basis of the lower court's verdict is due to the court's failure to file an opinion pursuant to Pa.R.App.P. 1925(a).

penses incurred on the faith of the contract." *Polka v. May, supra.*

■ Defendants argue that the only item of damages awarded by the lower court to which plaintiffs are entitled is the expense incurred in digging and testing the septic tank. We disagree. We conclude that the lower court correctly determined that plaintiffs could recover $4,100.00 for the commission paid to Elsie Rahon's real estate agency on the sale of their home. At the time plaintiffs paid the commission, they had an oral contract with Elsie Rahon to buy the Western Ranchette property. Additionally, under the real estate listing agreement, the sale of plaintiffs' home was contingent upon the purchase of the Western Ranchette property. It is therefore clear that plaintiffs paid the real estate commission on the faith of their oral contract.

■ The lower court erred in awarding plaintiffs $900.00 for the expense incurred in renting a cabin for a period of four months. Plaintiffs began renting the cabin when they moved out of their house in December of 1977. At that time they expected to live there for six months while their house was being built. They sought damages for four months' rent on the ground that as a result of Elsie Rahon's breach of the contract to sell the Western Ranchette property, they rented the cabin for an additional four months. As stated previously, plaintiffs are entitled to recover the expense incurred in renting the cabin only if it was incurred on the faith of their contract. *Polka v. May, supra.* Elsie Rahon informed plaintiffs in February of 1978 that she would not comply with the contract. Thus, the rental expense which plaintiffs sought to recover was incurred after they learned of the breach. Consequently, although plaintiffs may not have incurred the $900.00 expense in renting the cabin if Elsie Rahon had not breached the contract, they did not incur that expense on the faith of the contract. Accordingly, we modify the order of the lower court by reducing the amount of damages by $900.00.

Order modified.

SPAETH, J., files a concurring and dissenting opinion.

SPAETH, Judge, concurring and dissenting:

I agree with the majority that appellees are entitled to a verdict. However, I disagree with the majority's decision to modify the verdict. In my opinion the lower court was correct in awarding appellees the $900 they spent in renting the cabin for four months.

It is settled that a court will not grant a party specific enforcement of an oral contract for the sale of real estate. *Polka v. May*, 383 Pa. 80, 118 A.2d 154 (1955). However, the court will grant damages to a party who suffers losses on the faith of the oral contract. *Polka v. May, supra; Rineer v. Collins*, 156 Pa. 342, 27 A. 28 (1893); *Harris v. Harris*, 70 Pa. 170 (1871). The purpose of permitting the action for damages is not to give a disappointed vendee the benefits of his oral bargain, for that would be tantamount to enforcing a contract that is unenforcible under the Statute of Frauds; rather, the purpose is to indemnify a vendee who has incurred losses in reliance on the contract. *Rineer v. Collins, supra; Hertzog v. Hertzog's Administrator*, 34 Pa. 418 (1859). As the Supreme Court has said, "The vendor is to restore the vendee to the condition in which he found him, but he is not bound to compensate him for the value of the bargain." *Dumars v. Miller*, 34 Pa. 319, 323 (1859). Thus, the vendee may not receive the benefit of his bargain but only may recover the consideration paid and the expenses incurred on the faith of the contract. *Polka v. May, supra; Gray v. Howell*, 205 Pa. 211, 54 A. 774 (1903); *Rineer v. Collins, supra; Fry v. Flick*, 10 Pa.Super. 362 (1899). Accordingly, while monies spent for title searches, ground tests, counsel fees, and other expenses connected with the purchase may be recovered, *see Polka v. May, supra; Eberz v. Heisler*, 12 Pa.Super. 388 (1900); *see also Bitner v. Brough*, 11 Pa. 127 (1849), a claim for the excess of the value of the property over the purchase price will be denied, *Polka v. May, supra; Seidlek v. Bradley*, 293 Pa. 379, 142 A. 914 (1928). This is not to say that a vendee may never receive the benefit of his oral bargain, however, for, as the majority notes, if the vendee can show actual fraud by the vendor

reaching back to the original contract, his right to damages may be enlarged to include the loss of his bargain. *Seidlek v. Bradley, supra; Rineer v. Collins, supra.*

Whether there was fraud by Mrs. Rahon in the original contract in this case need not be discussed, for appellees' claim for the $900 excess rental expenses does not represent a claim for the loss of a bargain but, instead, a claim for expenses incurred in reliance on the contract. The majority, however, states that the excess rental expenses were not incurred in reliance on the contract, citing in support of this conclusion the fact that Mrs. Rahon informed appellees in February 1978 that she would not comply with the contract.

I fully support the general proposition that a vendee may not recover as damages any expenses that he was not justified in incurring. Thus, if the vendee is informed that the vendor will not perform, he should avoid incurring any expenses that he may reasonably avoid. In the present case, however, there has been no violation of this general proposition, for in the circumstances, the excess rental expenses could not reasonably have been avoided. If Mrs. Rahon had informed appellees of her breach before they had sold their home, appellees would have had a choice either to remain in that home or to proceed with the sale and move out. However, appellees sold their home and moved into the cabin in December 1977. When Mrs. Rahon told them, in February 1978, that she was not going to comply with the contract, they could not return to their home. They had to live somewhere. But for Mrs. Rahon's breach, they would have been living in a home they themselves owned, either their old home, or the new one they planned to build on her lot, and not in a rented cabin. Therefore, I believe that the excess rental expenses incurred were properly incurred in reliance on the contract. There is no suggestion that the length of the period for which appellees rented the cabin after notice of Mrs. Rahon's breach and the amount of the rent they paid were not reasonable.

Accordingly, I should affirm the decision of the court below.