**KEHR PACKAGES, INC., Charles and Emily McMurtrie and James McMurtrie, Appellee,**

v.

**FIDELITY BANK, NATIONAL ASSOCIATION, Thomas Donnelly, Neil Cohen and James Noon, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1997.

Filed April 13, 1998.

Reargument Denied June 22, 1998.

Walter Weir, Jr., Philadelphia, for Fidelity Bank, National Association, Donnelly, Cohen and Noon.

Pietro A. Barbieri, West Chester, for Kehr Packages, and McMurtrie.

Before CAVANAUGH, SCHILLER and MONTEMURO *, JJ.

MONTEMURO, Judge:

In this lender liability action, Appellant, Fidelity Bank, appeals from the denial of post-trial motions and entry of judgment in favor of Appellees, Kehr Packages, Inc. and Charles and Emily [1] McMurtrie and James McMurtrie (the McMurtries), in the total amount of $3,251,585.00 arising from a breach of an alleged oral agreement.[2] Appellant primarily contends that the trial court erred in failing to bar the admission of evidence concerning this alleged oral agreement pursuant to the parol evidence rule. We agree, and, therefore, reverse.[3]

Appellee–Kehr is a Pennsylvania corporation engaged in the business of printing cellophane packaging wrappers for the snack food

---

* Retired Justice assigned to Superior Court.

1. Emily McMurtrie's involvement in this transaction exists only to the extent that she and her husband, Charles, were joint owners of various real estate parcels, the mortgages of which were granted in favor of Fidelity Bank pursuant to the financing agreement involved in Appellees' purchase of Kehr Packages, Inc.

2. Appellees also raise a cross-appeal challenging the damages award; however, in light of our disposition of the instant matter, we need not address the issues contained in this cross-appeal as all of Appellee's issues are based upon the assumption that evidence of the alleged oral agreement is admissible.

3. In view of our disposition of this issue, we need not address Appellant's remaining contentions.

industry. In 1986, Roger Kehr negotiated the sale of Kehr Packages stock to Appellees Charles and James McMurtrie for the purchase price of $3,750,000. Soon thereafter, Appellant–Fidelity issued a written commitment to the McMurtries to finance the purchase and provide working capital financing for the company. The transaction by which the McMurtries acquired the Kehr Packages stock was what is commonly referred to as a "leveraged buyout," the entire funding of which was provided by the Fidelity loan. Fidelity's commitment was to lend the McMurtries a total of $4,165,000; $3,750,000 would be disbursed to fund the purchase price, and the balance would be used to finance closing costs and provide Kehr with a working capital line of credit.

The closing took place on December 12, 1986. During the morning, the parties completed the requisite written documentation between the McMurtries and Roger Kehr concerning the sale of assets. During the afternoon, the transaction moved to the bank financing component and involved the execution of a number of documents, including, *inter alia*, a written credit agreement, various promissory notes, real property mortgages, and financing statements.

Appellee–James McMurtrie testified that towards the end of the closing he realized that there were insufficient monies to fund the closing costs and still reserve a line of credit sufficient to continue operation of Kehr Packages. McMurtrie had anticipated that after the payment of closing costs, a balance of $350,000 would remain to fund a working capital line of credit; however, when he reviewed the settlement sheet only $165,000 was left for the line of credit.

Thereafter, the settlement was temporarily adjourned, and the McMurtries, with counsel, discussed the situation among themselves in a separate room. Following the session with counsel, the McMurtries met with James Noon and Neil Cohen, agents of Fidelity, who, according to the McMurtries, entered into an oral agreement promising to "term out" a line of credit in the form of an addi-

tional loan for $185,000, so that Kehr would have $350,000 working capital line of credit. After this meeting, the parties returned to the settlement table and completed the closing. Both Cohen and Noon testified, however, that they made no promise either to lend additional monies to Kehr or to alter the available line of credit. The terms of the alleged oral agreement were never included in any of the loan documents signed at the time of settlement or in other correspondence at any time thereafter.

By the summer of 1987, Kehr began to experience financial difficulty, and, although it was able to acquire additional working capital from other sources, it went into default on the loans. Fidelity confessed judgment against Kehr and the McMurtries, and assumed management control of Kehr, liquidating its assets and foreclosing on some of the real estate which secured the loans. After the proceeds from the sale of assets were applied to the outstanding debt, Kehr and the McMurtries remained indebted to Fidelity for the $3,001,585.25 balance left under the loans.

On June 18, 1990, Appellees, Kehr Packages and the McMurtries, filed suit against Appellants, Fidelity, Thomas Donnelly, Neil Cohen, and James Noon for breach of contract, negligent misrepresentation, and tortious interference with a contract. Following a bifurcated jury trial, Appellants were found liable to Appellees for breach of contract, promissory estoppel, and negligent misrepresentation.[4] After the damages phase of trial was completed, the jury awarded Appellee–Kehr $3,001,585.00 against all Appellants, jointly and severally, in addition to awarding Appellees Charles and Emily McMurtrie the sum of $250,000. Both parties filed post-trial motions, and, following oral argument on June 12, 1995, these motions were denied by Order dated January 6, 1997. Appellants filed this timely appeal presenting several issues for our review, the first of which challenges the admissibility of evidence of the

---

4. The jury also found in favor of Appellees upon their claim that Appellant–Fidelity liquidated Kehr's assets in a commercially unreasonable

manner. This claim was initially filed under a separate action and was later consolidated for trial with the instant case.

alleged oral agreement under the parol evidence rule.

Appellants first contend that

[t]he trial court erred in allowing the jury to hear evidence of an alleged oral promise to make an additional $185,000 loan to Kehr without first deciding whether, as a matter of law, the alleged oral agreement was barred by the parol evidence rule. This error was then compounded when the trial court allowed the jury to decide whether the alleged oral promise was made either before or after (but not contemporaneously with) the execution of the "Credit Agreement."

(Appellants' Brief at 15). Appellees sought the introduction of evidence concerning the alleged oral agreement to show that Appellants modified the written Credit Agreement, which governed the terms, conditions, and amounts of the loans, by orally agreeing to lend Appellees an additional $185,000. Appellants contend, however, that although it fails to contain an integration clause, the written Credit Agreement was a fully integrated document containing the final expression of the parties, and, therefore, the court erred by permitting parol evidence of the alleged oral modification.

■ We first note that our standard of review regarding a challenge to the admissibility of evidence is very narrow; we will only reverse a ruling of the trial court if there is an abuse of discretion or error of law. *Gemini Equipment Co. v. Pennsy Supply, Inc.*, 407 Pa.Super. 404, 412–13, 595 A.2d 1211, 1215 (1991). The parol evidence rule states that, absent fraud, accident, or mistake, parol evidence of a prior or contemporaneous oral agreement is not admissible to alter, vary, modify, or contradict terms of a contract which has been reduced to an integrated written instrument. *Id.* Therefore, before we permit the parol evidence rule to bar evidence of the alleged oral agreement, we must determine whether this agreement was made prior to or contemporaneous with

the Credit Agreement, as well as whether the Credit Agreement is an integrated writing.

■ Appellants contend that since this alleged oral agreement was made during the course of settlement, it was contemporaneous with the execution and delivery of the integrated Credit Agreement, and, therefore, any evidence concerning this oral modification is barred by the parol evidence rule. However, the trial court determined, and Appellees argue, that the relevant inquiry is whether the oral agreement occurred before or after the signing of the Credit Agreement. In essence, the focus is on the Credit Agreement as the controlling document, and, according to this analysis, if the oral agreement was made after the Credit Agreement was signed, it constitutes a subsequent modification, the evidence of which is not barred by the parole evidence rule.[5] Upon review of the applicable authority, we disagree with this analysis and find that the trial court's focus upon the actual signing of the Credit Agreement as the determining factor for the application of the parol evidence rule was erroneous.

The alleged oral agreement occurred during settlement proceedings on December 12, 1986. During the day-long course of this closing, Appellees executed a number of documents, including the Credit Agreement, security agreement, various promissory notes, and UCC–1 financing statements, all of which related to their financing obligations to Appellant–Fidelity Bank. However, near the conclusion of this proceeding, Appellee–James McMurtrie discovered that insufficient monies remained to satisfy both the closing costs and reserve a $350,000 line of credit for working capital. It was at this time, before settlement had been completed, that Appellees insisted upon a temporary adjournment so that they could discuss this matter with their attorney. Following this meeting with counsel, Appellees spoke with the agents of

---

**5.** The trial court concluded that this was a factual question to be determined by the jury through special interrogatories which asked whether the oral agreement was made before or after the signing of the Credit Agreement. Over Appellants' objection, and contrary to the language of the parol evidence rule, the court refused to instruct the jury as to whether the agreement was "contemporaneous with" the execution of the Credit Agreement. The jury found that the oral agreement occurred after the Credit Agreement was signed.

Appellant–Fidelity, Noon and Cohen, during which time they allege that Appellants orally promised to lend an additional $185,000 line of credit. Soon thereafter, Appellees returned to complete the settlement proceeding. Appellants deny that any oral promise was ever made.

We find that the trial court's decision to designate the execution of the Credit Agreement as a terminus beyond which point evidence of all other agreements would not be barred by the parol evidence rule improperly attempts to create a distinction without a difference. This Credit Agreement, which undisputedly controls, *inter alia*, the type and amount of the loans, was but one document of many executed in the course of the lengthy settlement proceeding. Upon review, it is clear that this settlement proceeding constituted *one transaction* in which Appellees sought to obtain financing from Appellant–Fidelity to fund their purchase of Kehr Packages. The execution of one specific agreement, i.e., the Credit Agreement, cannot be divorced from that of other, interrelated agreements within the same transaction when it is clear that the rights and liabilities of the parties to this transaction did not attach until the conclusion of settlement, when all of the documents had been duly executed and delivered and the monies distributed.

Thus, focusing upon the actual point in time at which one of numerous documents was signed in the course of a complex financial transaction improperly places form over substance, and creates an absurd distinction between contemporaneous and subsequent modifications which was surely not within the contemplation of the parol evidence rule. All of the documents, including the Credit Agreement, relating to the financial obligations between Appellants and Appellees were executed and delivered within essentially one transaction which constituted the entire settlement proceeding between these parties. Accordingly, we find that the alleged oral agreement, which undisputedly occurred *during* this transaction, was *contemporaneous* with the execution of the Credit Agreement.

Next, we must determine whether the Credit Agreement, which the alleged oral agreement purports to modify, constitutes an integrated writing which would bar the admission of any parol evidence seeking to alter its terms. Initially, we note that the "purpose of the parol evidence rule is to preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous oral declarations." *Lenzi v. Hahnemann University*, 445 Pa.Super. 187, 195, 664 A.2d 1375, 1379 (1995) (citation and internal quotation marks omitted). Therefore, before the parol evidence rule is applied, the court must determine, as a matter of law, whether the writing at issue is an integrated agreement. *McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 349–51, 534 A.2d 115, 118 (1987).

A written contract is "integrated" if it represents a final and complete expression of the parties' agreement. *Lenzi*, 445 Pa.Super. at 194–96, 664 A.2d at 1379. In the instant case, the trial court determined that the Credit Agreement was not an integrated writing because of the absence of an integration clause. The court stated that "[n]othing in the parties' written agreement supports the contention that it was intended as a complete and exclusive statement of the terms of the agreement." (Trial Ct. Op. at 9). We note, however, that although the presence of an integration clause within an agreement makes the parol evidence rule particularly applicable, *McGuire*, 368 Pa.Super. at 347–49, 534 A.2d at 117, its absence does not automatically subject the written agreement to parol evidence. *See International Milling Co. v. Hachmeister Inc.*, 380 Pa. 407, 417, 110 A.2d 186, 191 (1955)(holding that "the presence of an integration clause cannot invest a writing with any greater sanctity than the writing merits...."). Rather, in the absence of an integration clause, the court "must examine the text [of the agreement] to determine its completeness." *Henry v. First Federal Savings & Loan Assoc.*, 313 Pa.Super. 128, 136, 459 A.2d 772, 776 (1983)(affirming summary judgment and finding evidence of alleged prior oral representations were barred by the parol evidence rule upon finding that,

even in absence of integration clause, written loan agreement was complete as to such matters). *See Gemini Equipment, supra* (barring evidence of alleged contemporaneous oral agreement to vary terms of written agreement; despite absence of integration clause, the writing was fully integrated since it unambiguously detailed the parties' rights and obligations).

▄▄▄▄▄ In examining the Agreement at issue, we are mindful that typically, in cases such as this, "where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject." *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 324, 126 A. 791, 792 (1924)(landmark case discussing parol evidence rule). Further, it is well established that parol evidence of a contemporaneous oral agreement is inadmissible if the subject of such agreement would naturally and normally have been included in the writing between the parties. *Gemini Equipment*, 407 Pa.Super. at 414, 595 A.2d at 1216 (stating that "parol evidence is not admissible to show an agreement which normally is found in the written instrument."). Therefore, if the written agreement and the alleged oral agreement "relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the [oral] agreement must be taken to be covered by the writing." *Gianni*, 281 Pa. at 324, 126 A. at 792.

▄▄▄▄ Despite the absence of an integration clause, we find that the Credit Agreement in the instant case is a fully integrated contract. In comparing the contents of the alleged oral agreement and the written Credit Agreement, it is clear that both address the same subject-matter and are greatly interrelated. Appellee–James McMurtrie testified that Fidelity's agents agreed to "term out" a line of credit in the form of an additional loan of $185,000. Allegedly, this loan was to be governed by the

same terms and conditions as the other loans which were enumerated in the Credit Agreement, and, therefore, according to Appellees, the only thing that was not in writing was the amount of this "additional" loan.

The text of the Credit Agreement provides in minute detail the rights and liabilities of the parties, including, *inter alia*, the exact amount of money that Appellant–Fidelity was to lend Appellees, the type of loan which was advanced—either a "Term Loan" or a "Line Loan"[6]—as well as the collateral or security which Appellees pledged for the loans. Perhaps most revealing, however, is the fact that under the Credit Agreement, all loans are required to be evidenced by either a Term or Line Note, and, as a condition precedent to the advancement of the loans, Appellees were to deliver to Appellant–Fidelity such duly executed Notes.

Therefore, it is clear that by its very terms, this alleged oral promise to advance an additional Line Loan of $185,000 for working capital is precisely the type of thing that would naturally and normally have been contained in the written Credit Agreement. In fact, in addition to other Term Notes, Appellees executed and delivered a $600,000 Line Note at settlement. However, although Appellees claim that the alleged $185,000 loan was to be governed by the terms of the Credit Agreement, this amount is not evidenced in any way by a Line or Term Note, as mandated by the Agreement. Indeed, it is difficult to fathom why, despite ample opportunity before the conclusion of settlement to incorporate this additional $185,000 loan into the Credit Agreement, Appellees, who were not only represented by counsel, but who are also sophisticated business people, failed to do so. It is all too clear that Appellees "should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely . . . ." *McGuire*, 368 Pa.Super. at 353, 534 A.2d at 120.

▄▄▄▄ As a result, we conclude that evidence of the alleged contemporaneous oral

---

**6.** According to the Credit Agreement, Line Loans were provided for general working capital purposes, the advancement of which was in the sole discretion of the Bank. *See* Credit Agreement ¶¶ B, 2.1.

agreement is barred by the parol evidence rule since it is offered solely to modify or add to the terms of the integrated written Credit Agreement.

Judgment reversed. Case remanded for new trial limited to the issue of damages.[7] Jurisdiction relinquished.

CAVANAUGH, J., files a Concurring Opinion.

CAVANAUGH, Judge, concurring:

I agree with the majority that the parol evidence rule should bar any evidence pertaining to the alleged contemporaneous oral agreement in this matter. However, I write separately for the following reasons.

First, I think it is important to note the anomalous background of this case. This matter proceeded in accordance with the Judge Pro Tempore system in Philadelphia. The employment of such a system suggests several considerations for an appellate court which, although not issues on appeal, I feel cannot go unnoticed. This case was tried over a period of several days in July, August and September of 1992 before Judge Pro Tempore Thomas B. Rutter and a jury. The reproduced record is contained in seven volumes and is in excess of 2,500 pages. The certified record is much larger. However, the post-trial motions were disposed of by The Honorable Mark I. Bernstein, a commissioned judge, who was not present for the original trial. Therefore, the post-trial motions were considered and adjudicated by a judicial officer who did not try the case and did not have the immediate hands-on intimacy of the case as would a trial judge.[1]

Therefore, I would note that while our appellate standard of review presupposes that we are addressing an issue decided by one who has had the opportunity to view the parties and the witnesses and to hear the testimony first-hand, this is not true of cases which employ the Judge Pro Tempore system. For this reason, I believe that in such cases our standard of review from the lower court's disposition must be informed by a recognition that the post-trial judge was different from the Judge Pro Tempore who actually heard the case. While these considerations have not been articulated in any of our appellate decisions, I believe that the unusual nature of the case should not go unnoticed.

I also note that, because the majority has reversed and simply remanded for further proceedings, it is unclear what further proceedings might occur in this case on remand. Since we have ruled out the evidence admitted in violation of the parol evidence rule, it could be argued that there is no case remaining and the result is, in effect, a Judgment Notwithstanding the Verdict in favor of appellant, Fidelity Bank. However, it can also be argued that only a new trial may be granted as a result of this appellate decision which diminishes the record.

In the event that this case proceeds to a new trial, I wish to go on record as to other considerations which were raised by Fidelity Bank on appeal which may again be at issue upon re-trial. First, I would note my agreement with appellants on the issue of reliance damages. If appellee is successful at re-trial, damages, if any are proven, should properly be limited to reliance damages. *See Green v. Interstate United Management Services Corp.*, 748 F.2d 827 (3d Cir.1984) (a plaintiff who is successful in a lawsuit for breach of an oral agreement that is subject to the statute of frauds is only entitled to recover reliance damages for the breach); *see also Linsker v. Savings of America*, 710 F.Supp. 598 (E.D.Pa.1989) (reliance damages are the only

---

**7.** We note that a second suit filed by Appellees against Fidelity for commercially unreasonable liquidation of Kehr's assets was consolidated for trial with Appellees' breach of contract complaint. The jury specifically found Fidelity liable on the basis of unreasonable liquidation. Fidelity's liability on this ground, which is not at all dependent upon the existence of the alleged oral agreement, was not challenged on appeal, and, thus, remains unaffected. Appellees' damage award, however, was not allocated between the

causes of action. Accordingly, we remand this matter so that the trial court may conduct a new trial limited to the issue of damages related to the unreasonable liquidation claim.

**1.** I note that while the Judge Pro Tempore, Thomas B. Rutter, was in attendance at the hearing on the post-trial motions, the matter was disposed of by Order of Judge Bernstein alone.

measure of recovery for an action for breach of an oral contract subject to the statute of frauds; a plaintiff cannot be compensated for the loss of its bargain pursuant to such a contract). Reliance damages have been defined to be the expenses which are paid on account of the purchase and the "expenses incurred on the faith of the contract." *Polka v. May,* 383 Pa. 80, 85, 118 A.2d 154, 156 (1955); *Fannin v. Cratty,* 331 Pa.Super. 326, 332, 480 A.2d 1056, 1059 (1984); *Weir v. Rahon,* 279 Pa.Super. 508, 513, 421 A.2d 315, 317 (1980). However, reliance damages are not automatic. Upon re-trial, the plaintiffs must show that they incurred expenses in reliance upon the oral promise, and that there is a direct relationship between those expenses and the defendant's breach of its oral agreement. *Weir,* 279 Pa.Super. at 514–16, 421 A.2d at 318.

Additionally, I agree with appellant's contention that the award of $250,000.00 made to Charles and Emily McMurtrie was contrary to law. The courts of this Commonwealth have long held that where the gravamen of a claim is injury to a corporation, the shareholders of the corporation may not claim injury to themselves rather than the corporation. *In re Penn Central Securities Litigation,* 347 F.Supp. 1324 (E.D.Pa.1972); *Burdon v. Erskine,* 264 Pa.Super. 584, 401 A.2d 369 (1979). The shareholder claims in this case are clearly derivative as the McMurtries' injuries, if any, are indirectly related to Kehr's claim for breach of contract. As such, only Kehr may maintain this action. *Mid-State Fertilizer v. Exchange National Bank,* 877 F.2d 1333 (7th Cir.1989) (Seventh Circuit court of appeals dismissed as derivative the claims asserted by guarantors, who were also shareholders of the plaintiff corporation, against bank for refusing to make additional advances under a line of credit; in doing so, the court stated that guarantors are contingent creditors of a corporation who could not recover directly for injuries to the corporation; any injury to the guarantors was indirectly the result of the bank's breach of its agreement with the corporation). Thus, because the claims for breach of contract or impairment or destruction of Kehr's business is solely vested in the corporation and not in the shareholders, I would find that upon re-trial, Charles and Emily McMurtrie are precluded from bringing a direct action against Fidelity Bank or any of its representatives for damages suffered as a result of the alleged breach of Fidelity Bank's obligations to Kehr.

Finally, I want to note my confusion with respect to the appellants' contentions concerning the liquidation in a commercially unreasonable manner issue. On page 9 of appellee's brief it is stated in footnote 9 "In his memorandum opinion, Judge Bernstein stated that the jury found in favor of Appellants on their claim that Fidelity liquidated Kehr's assets in a commercially unreasonable manner. (Op. at p.3). This was not the case. In the second action filed by Appellants against Fidelity and its officer, Thomas Donnelly, Appellants claimed that Fidelity disposed of certain assets of Kehr, consisting of accounts receivable, inks and dyes, and a VOC permit, in a commercially unreasonable manner. (R.82A). The jury found that Fidelity and Donnelly collected the accounts receivable in a commercially reasonable manner. Appellants then withdrew their claims and a consensual judgment was entered in favor of Fidelity and Donnelly in that case. (R.6a)."

On the other hand, the record in this case contains jury verdict interrogatory answers 15 and 16 which are at odds with Fidelity's argument.

In conclusion, I concur in the result mandated by the majority opinion but would add the above stated considerations.

