J-A12019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DANIEL P. WUKICH, DANIEL J. WUKICH, TAMMY L. WUKICH, QUEST HEALTHCARE DEVELOPMENT, INC., QUEST REALTY PARTNERSHIP, AMERICAN PORTABLE MEDICAL SERVICES, INC., LOYALHANNA HEALTH CARE ASSOCIATES, WILLIAM PENN HEALTH CARE ASSOCIATES, ALLSTAR THERAPIES, INC., ALLSERVE THERAPIES, INC., A LA CARTE SUPPORT SERVICES, INC., EXPRESS MOBILE DIAGNOSTIC SERVICES, LLC, DANAN HEALTHCARE CONSULTING GROUP, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | |
| Appellants | |
| | |
| v. | |
| | |
| PENN SECURITY BANK AND TRUST CO., CRAIG BEST, GREG MISTERMAN | No. 1212 WDA 2016 |

Appeal from the Judgment Entered September 28, 2016
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): No. 13CI01193

BEFORE:  OLSON, SOLANO, and RANSOM, JJ.

MEMORANDUM BY RANSOM, J.:                    **FILED AUGUST 08, 2017**

In this lender liability action, Appellants appeal from the judgment entered September 28, 2016, following a non-jury trial resulting in a verdict in favor of Appellees, Penn Security Bank & Trust Co. ("Penn Security") and two of Penn Security's principals, Craig Best and Greg Misterman.  We affirm.

The facts and procedural history are as follows. In August 2007, Appellants Loyalhanna and William Penn entered into a loan agreement with NexTier Bank for an aggregate principal amount of $9,300,300.00 ("NexTier Loan Agreement"). Pls. Amended Compl., 10/18/2013, at ¶ 19. The NexTier Loan Agreement and promissory note were executed by Appellant Daniel J. Wukich, President of Appellant Quest Healthcare and sole general partner of Loyalhanna and William Penn, along with Appellants Daniel P. and Tammy Wukich, Quest Healthcare, American, and Allstar Therapies as guarantors. *Id.* at ¶¶ 19-21.

In 2011, Appellants Daniel J. and Daniel P. Wukich sought financing for a new business venture with Appellee Penn Security Bank based on their previous knowledge and relationship with Appellee Craig Best, Penn Security Bank Chief Executive Officer (CEO). *Id.* at ¶ 24. To finance the construction of a new assisted living facility, Appellants wanted to use their William Penn property as collateral. Trial Ct. Op. (TCO), 4/13/2016, at 2. However, Appellants would first have to pay off the outstanding mortgage loan held by NexTier Bank. *See id.* Under the terms of the NexTier Loan Agreement, early payoff of the mortgage would result in a "hefty prepayment penalty." *Id.*[1]

---

[1] Specifically, the NexTier loan agreement provided in relevant part that "any Prepayment arising out of refinancing through another lending source other than Lender of principal shall be subject to a prepayment fee of three (3%) percent of any Prepayment during years 1 through 5 of the Loan Term, two
*(Footnote Continued Next Page)*

According to Daniel J. Wukich, Appellee Best had the idea that Penn Security could issue a personal loan in an amount sufficient to pay off the NexTier loan, using a structure that might avoid the prepayment penalty.[2] The idea was that the prepayment penalty might be avoided if the NexTier loan was paid off by unnamed borrowers, rather than by a third party lender such as Penn Security directly. *See id.* at 2-3. In February 2011, Appellee Greg Misterman, Penn Security Executive Vice President (VP), prepared a memorandum entitled Loan Presentation Summary for the Penn Security Board of Directors, which described a loan structure in which the bank would lend $7,100,000.00 to an affiliate, which in turn would enable the Wukiches to pay off the remaining balance/principal of the NexTier Loan. The board memorandum stated that this "structure is being used to avoid a significant prepayment penalty." Mem., 2/15/2011, at 4 ("board memorandum").

On April 26, 2011, Appellants executed the Penn Security Loan Agreement ("Agreement"). At trial, Appellee Misterman recalled giving his

_____

*(Footnote Continued)* ———————————

(2%) percent of any Prepayment during years 6 through 12 of the Loan Term and one (1%) of any Prepayment during the remainder of the loan term." Pl. Amended Compl. at ¶ 22 (quoting NexTier Loan Agreement ¶ 5 and Promissory Note ¶ E, 8/31/2007).

[2] The Wukiches had an extended history of conviviality and partnership with Penn Security Bank, from which both parties benefitted. Appellee Craig Best helped Wukich obtain financing in 2007 to pay off a balloon payment on a separate mortgage and Wukich became a stockholder in Penn Security. Wukich was instrumental in Best's ascension to President/Chief Executive Officer of Penn Security. Trial Ct. Op., 4/13/2016, at 5.

opinion that the penalty might be avoided.  Trial Ct. Op., 4/13/2016, at 3.

Misterman denied promising on Penn Security's behalf to take care of the

penalty if it was imposed by NexTier.  Misterman also denied discussing the

prepayment penalty at closing.  *Id.* at 3.  None of their discussions were

incorporated into the final Penn Security loan closing documents.  *Id.*  The

primary purpose of the Agreement was for Appellants to borrow

$7,100,000.00 from Penn Security to enable Appellants to embark on a new

project, i.e. the assisted living facility.  *See id.*

On April 29, 2011, Daniel J. Wukich used the Penn Security loan to pay

off the NexTier loan's principal balance of $7,121,628.69 in full.  *See id.* at

6.  Thereafter, a court entered a declaratory judgment in favor of NexTier

Bank and against Appellants for the prepayment penalty that was owed

($206,448.32), plus attorney's fees, costs, and interest.[3]

In 2013, Appellants filed suit against Appellees, Penn Security Bank,

Best, and Misterman, asserting joint and several liability for fraud, negligent

---

[3] On July 18, 2011, NexTier Bank filed a complaint in the Butler County Court of Common Pleas for a declaratory judgment against Appellants for the prepayment penalty that was owed ($206,448.32), plus attorney's fees, costs, and interest.  *See NexTier Bank, N.A. v. Loyalhanna Health Care et al.*, No. A.D. 11-10911 (CCP Butler Cty. 2011).  On November 21, 2012, the Butler County court found in favor of NexTier Bank and entered a judgment as a matter of law against Appellants for the prepayment penalty, plus costs of litigation and interest.  *See* Pl. Amend. Compl., 10/18/2013, at ¶¶ 35-36.  This Court affirmed the judgment.  *See NexTier Bank, N.A. v. Loyalhanna Health Care et al.*, 1994 WDA 2012 (Pa. Super. Ct. July 17, 2013) (unpublished memorandum).

misrepresentation, promissory estoppel, and common law indemnification arising out of Best and Misterman's oral representations regarding the prepayment penalty that allegedly induced Appellants to enter into the Agreement. *See* Pls. Amended Compl., ¶¶ 38-67. In December 2015, a nonjury trial was held.[4] In April 2016, the court rendered a verdict in favor of Appellees. *See* TCO, 4/13/2016, at 7-8.

Appellants timely filed a post-trial motion seeking judgment notwithstanding verdict (JNOV) or in the alternative, a new trial. Their post-trial motion was denied. The court subsequently issued an amended opinion. *See* TCO, 7/28/2016, at 1.

Appellants timely appealed and filed a court-ordered 1925(b) statement. The trial court issued a 1925(a) opinion, incorporating its earlier decisions. *See* 1925(a) Opinion, 9/12/2016.[5]

On appeal, Appellants raise the following seventeen issues:

1. The [c]ourt erred in denying [Appellants] a jury trial when several of their claims related to the individual liability of [Appellees] Misterman and Best, and the alleged waiver of the [Appellants'] constitutional right to a jury only applied to

---

[4] The lower court denied Appellants' request for a jury trial, finding that they had waived the right to a jury trial under the terms of the loan agreement.

[5] Initially, Appellants appealed on August 10, 2016, from the order denying this post-trial motion. This Court directed Appellants to provide proof that judgment was entered on the trial court's verdict. Appellants timely complied. Accordingly, we deem this appeal timely. *See Minich v. City of Sharon*, 472 A.2d 706, 707 (Pa. Super. 1984).

claims against the Bank.

2. In its written [o]pinion, the [c]ourt failed to address [Appellants'] causes of action and elements for negligent misrepresentation, promissory estoppel, and indemnification, focusing instead on [Appellants'] fraud claim alone.

3. The representations and promises of the expert [Appellees] concerning the prepayment penalty, upon which [Appellants] reasonably relied, caused [Appellants] to incur liability and expenses which they would not have incurred but for [Appellees'] conduct.

4. Consequently, [Appellees] are liable, at common law, under theories of negligent misrepresentation and estoppel, and are liable to indemnify [Appellants] for the losses they have incurred due to [Appellees'] broken promises.

5. The [c]ourt's failure to consider whether [Appellees] were liable for negligent misrepresentation, promissory estoppel, or common law indemnification, the elements of which are different than those required to prove fraud, is an error entitling [Appellants] to a new trial.

6. The [c]ourt erred in applying the parol evidence rule to exclude or disregard extrinsic evidence of [Appellees'] promises to take responsibility if NexTier imposed the prepayment penalty.

7. The [c]ourt erred in ignoring the internal Penn Security memorandum, which was provided to the Bank's Board of Directors, which stated that the Penn Secuirty loan was being utilized to avoid the significant prepayment penalty. (Trial Exhibit 5, p. 4.)

8. The [c]ourt erred in concluding that any discussions about the prepayment penalty were mere good faith expressions of advice and opinion, where Penn Security's own internal memorandum indicated that the loan was used to avoid the prepayment penalty, where the evidence established [that Appellees] were experts upon whom [Appellants] could rely, and where counsel for [Appellees], on behalf of those [Appellees], stipulated that it would require a bank to know whether a prepayment penalty could be avoided.

9. The [c]ourt erred in concluding that the final Penn Security loan closing documents were integrated agreements.

10. The [c]ourt erred by ignoring and/or failing to consider evidence and testimony that the [Appellees] did not give [Appellants] an opportunity to review the loan documents before the closing, and instead represented again that the prepayment penalty would be avoided or taken care of by the [Appellees] Bank [sic], who committed, at a minimum, fraud in the execution or negligent misrepresentation (which was not addressed by the [c]ourt).

11. The [c]ourt erred in ignoring the final letter from NexTier Bank, which indicated that the amount owed, including the prepayment penalty, exceeded $7.3 million.

12. The [c]ourt erred in concluding that the total payoff amount of the NexTier loan, including the prepayment penalty, was $7,121,628.69, as this was contrary to the evidence presented by [Appellants], which was not controverted by [Appellees].

13. The [c]ourt erred in concluding that [Appellants] were required to approach or notify [Appellees] immediately upon being sued by NexTier in order to recover, and by ignoring, in any event, [Appellants'] testimony that they did believe [that] they advised [Appellees] upon being sued by NexTier through their former in-house counsel.

14. The [c]ourt erred in concluding that the primary purpose of the financing from Penn Security was not to avoid the prepayment penalty, where all evidence suggested that avoiding the prepayment penalty was a significant purpose of the loan, where the uncontroverted evidence showed that [Appellants] had several options from banks with similar or better financial terms, and where the person in charge of the project for [Appellants], with the authority to choose the bank (Daniel P. Wukich) testified that the only reason he selected the [Appellee] Bank over the other lenders was because of its representations regarding the prepayment penalty.

15. The [c]ourt erred by ignoring uncontroverted testimony that [Appellees] Best and Misterman would cause [Appellee] Bank to take care of the prepayment penalty if it was assessed by NexTier, notwithstanding the [Appellees']

representations.

16.     The [c]ourt erred in concluding that the Penn Seucirty loan proceeds were sufficient to cover the principal and interest on the NexTier loan, as well as the prepayment penalty.

17.     The [c]ourt erred in placing undue reliance on the self-serving testimony of [Appellee] Craig Best regarding his statements of 'opinion,' where the uncontroverted evidence and admission of the [Appellees], in writing, was that the loan was being utilized to avoid a significant prepayment penalty, thus making his self-serving testimony incredible *per se*.

Appellants' Br. at 27-30 (reciting issues presented in Appellants' 1925(b) statement).

It is well-established that a 1925(b) statement "must be 'concise' and 'coherent' such that the trial judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith." ***Jiricko v. Geico Insurance Company***, 947 A.2d 206, 211 (Pa. Super. 2008). Where the statement is so incoherent, confusing, or redundant that it impairs appellate review, issues in the statement are deemed waived. ***Jiricko***, 947 A.2d at 213. "Specifically, this Court has held that when appellants raise an 'outrageous' number of issues in their 1925(b) statement, the appellants have 'deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise.'" ***Id.*** (quoting ***Tucker v. R.M. Tours***, 939 A.2d 343, 346 (Pa. Super. 2007) (quoting ***Kanter v. Epstein***, 866 A.2d 394, 401 (Pa. Super. 2004) (finding issues waived where concise statement was "anything but *concise*").

We caution appellants against presenting voluminous and redundant issues on appeal. In their brief, Appellants effectively reorganized these issues into five arguments, divided with an appropriate number of subheadings, and effectively reduced a number of the redundant issues. *See* Pa.R.A.P. 2119 ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Here, the trial court has not indicated that its ability to review the issues presented was impeded by Appellants' lengthy statement. Accordingly, we decline to find waiver and will proceed to address the questions in the order presented in their arguments. *See* Appellants' Br. at 4-5. However, the issues not raised in Appellants' argument section of the brief are deemed waived for lack of development. Pa.R.A.P. 302, 2101.[6]

Appellants have referenced standards of review for both JNOV and a new trial. *See* Appellants' Br. at 3. We will evaluate Appellants' issues based on the specific request for relief included in the relevant analysis. *See Irwin Union Nat. Bank & Trust Co. v. Famous*, 4 A.3d 1099, 1103

---

[6] We will address the issues raised in their arguments in the following order: (1) whether Appellants' waived their right to a jury trial; (2) whether the evidence established their claims for promissory estoppel, negligent misrepresentation, and common law indemnification; (3) whether the court erred in rendering its legal conclusion that the agreement was fully integrated agreement and whether the parol evidence rule applied; (4) whether the court failed to consider certain evidence; and (5) whether the court properly assessed the weight of Best's testimony. *See* Appellant's Br. at 5-6. After careful review, we deem issues eight and thirteen waived.

(Pa. Super. 2009) (noting that "[w]hen deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived") (citing Pa.R.A.P. 2101).

Our standard of review is well-settled:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating and Cooling LLC*, 100 A.3d 660, 664–65 (Pa. Super. 2014) (quoting *Wyatt, Inc. v. Citizens Bank*, 976 A.2d 557, 564 (Pa. Super. 2009) (internal citations omitted)). Although the trial court does not provide a detailed legal analysis in its opinion, "this Court may affirm a decision of the trial court when it is correct on any legal ground without regard to the ground upon which the trial court relied." *Williams v. Wade*, 704 A.2d 132, 135 (Pa. Super. 1997).

First, Appellants seek a new trial based on the allegation that the trial court erred in denying their constitutional right to a jury trial. According to Appellants, the jury trial waiver in the Agreement with Penn Security Bank

did not necessarily apply to the claims asserted against Appellees Best and Misterman individually. Appellants also contend that it is not certain whether their claims arose out of the Agreement so as to implicate the waiver. **See** Appellants' Br. at 11-12 (citing in support PA. CONST. Art. 1, § 6).

In response, Appellees argue that the jury trial waiver in the Agreement applied to Penn Security and its agents for all claims arising from the oral statements made during the course of negotiations prior to execution of the Agreement. **See** Appellees' Br. at 40 (citing in support persuasive authority from the Third Circuit, ***Tracinda Corp. v. Daimler Chysler AG***, 502 F.3d 212, 225 (3d Cir. 2007), holding: "[W]hen a valid contractual jury trial waiver provision applies to a signatory corporation, the waiver also applies to nonsignatory directors and officers seeking to invoke the waiver as agents of the corporation.").

Here, the trial court found that the jury trial waiver applied equally to claims against Penn Security and its agents because Appellees Best (as CEO) and Misterman (as VP) were acting on behalf of and in their capacity as agents of Penn Security when the acts underlying the causes of action arose. **See** 1925(a) Opinion, 9/9/2016, at 2. Our standard of review is as follows:

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written

agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

**Stephan**, 100 A.3d at 665 (quoting **Humberston v. Chevron U.S.A., Inc.**, 75 A.3d 504, 509–10 (Pa. Super. 2013) (internal quotation marks and citations omitted)).

An agency is created when the principal deliberately and specifically grants an agent express authority as to certain matters. **Walton v. Johnson**, 66 A.3d 782, 786 (Pa. Super. 2013). The *prima facie* demonstration of agency "is the notion that the agent has authority to alter the principal's relationships with third parties, such as binding the principal to a contract." **Basile v. H & R Block**, 761 A.2d 1115, 1121 (Pa. 2000).[7] "The burden of establishing an agency relationship rests with the party asserting the relationship." **eToll, Inc. v. Elias/Savio Advert., Inc.**, 811 A.2d 10, 21 (Pa. Super. 2002) (quoting **Basile**, 761 A.2d at 1120) (citation omitted).

Here, Penn Security manifested an intention for Best and Misterman to act as its agents by giving Best and Misterman the authority to negotiate the

---

[7] **See also** RESTATEMENT (SECOND) OF AGENCY § 12: Agent as Holder of Power ("An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself.").

loan terms on Penn Security's behalf. Best executed the contract thereby binding Penn Security. *See Basile,* 761 A.2d at 1121. In this case, Appellants' claims arise from Best and Misterman's alleged misrepresentations during their exercise of apparent authority to act on behalf of Penn Security. Accordingly, the trial court correctly found that the individual Appellees were acting as agents of Penn Security.

Moreover, "[i]t is well-settled that the right to a jury trial may be waived either by conduct or by express statement." *Eighth N.-Val, Inc. v. William L. Parkinson, D.D.S., P.C., Pension Trust*, 773 A.2d 1248, 1256 (Pa. Super. 2001) (citations omitted). Here, the Agreement contained the following provision in **bold font** in clear and conspicuous language:

> 17. <u>WAIVER OF JURY TRIAL</u>. Each of the Borrowers and each of the Entity Guarantors and William Penn irrevocably waive all and any right any of them may have to a trial by jury in any action, proceeding, or claim of any nature regarding the Term Loan, any of the documents executed in conjunction with the Term Loan or any transaction contemplated in any such documents. Each of the Borrowers and each of the Entity Guarantors acknowledge that the foregoing waiver is knowing and voluntary.

Trial Exhibit 8, Agreement ¶ 17.

Here, the court found that the purpose of the loan was to secure financing for a new facility by using the William Penn property as collateral. In order to pledge that property as collateral, Appellants needed to prepay the NexTier loan. Therefore, prepayment of the loan was a transaction contemplated by the parties in entering into the Agreement. Accordingly, the court did not err and a new trial is not warranted.

- 13 -

Next, we proceed to address issues two, three, four, and five. Appellants contend that the court erred in failing to consider their causes of action for promissory estoppel, negligent misrepresentation, and indemnification. **See** Appellants' Br. at 13. In their brief, Appellants' argument is divided into three subparts. Essentially, they argue that the evidence presented was sufficient to support each claim. **See id.** at 13-19.

In response, Appellees contend that the trial court's factual findings were sufficient to dispose of Appellants' claims. **See** Appellees' Br. at 13-29.

The trial court declined to address Appellants' claims individually; it found that there was simply no basis upon which Appellees should be liable to Appellants. **See** TCO, 4/13/2016, at 7; TCO, 7/28/2016, at 4. The trial court has failed to prove a "reasoned basis" for its decision. **See Cooke v. Eq. Life Assur. Soc. of U.S.**, 723 A.2d 723, 727 (Pa. Super. 1999) (declining to remand to trial court to prepare an opinion providing a reasoned basis for the court's decision where such reasoning is not fatal for our review). "Ordinarily, the remedy for non-compliance with the Pa.R.A.P. 1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court." **Gibbs v. Herman**, 714 A.2d 432, 435 (Pa. Super. 1998) (quotation omitted).

The record in this particular case is sufficient for appellate review and in the interests of judicial economy, we shall address the merits of Appellants' arguments. **See Gibbs**, 714 A.2d at 437 (affirming the trial court's decision despite noncompliance with Pa.R.A.P. 1925(a)). As noted

previously, this Court may affirm the trial court's decision to a deny a new trial on any proper legal ground. ***Williams***, 704 A.2d at 135.

In order to prevail on any of these claims, Appellants needed to establish that the evidence more likely than not would enable the factfinder to find all of the necessary elements of the causes of action were established by a preponderance of the evidence. ***Samuel-Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 34-35 (Pa. 2011). We will address each of Appellants' claims individually.

> In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise. As promissory estoppel is invoked in order to avoid injustice, it permits an equitable remedy to a contract dispute.

***Crouse v. Cyclops Indus.***, 745 A.2d 606, 610 (Pa. 2000) (citation omitted); ***see also*** RESTATEMENT (SECOND) OF CONTRACTS § 90.

Appellants argue that Appellees should be estopped from denying that their oral promises induced Appellants to enter into the Agreement. ***See*** Appellants' Br. at 15-16. Appellants alleged that they were told by Appellee Best that "Penn Security would 'take care of [the prepayment penalty]' and make it right." ***Id.*** Appellants alleged that "promises made by Best and Misterman to pay any prepayment penalty incurred in connection with the NexTier loan" constituted "a contract in that the promise was supported by the consideration of [Appellants] entering into the [Agreement] and

- 15 -

executing guarantees and mortgages." *Id.* at ¶ 61.[8]

The trial court found Appellants to be "experienced, sophisticated, business-savvy, entrepreneurs who were determined to find financing to build a new assisted living facility." TCO, 7/28/2016, at 3. The court found that Appellees testified credibly that the "creative suggestion and opinion about the way in which the prepayment penalty might be avoided was just that – an idea or contrivance that may or may not work." *Id*. Moreover, the court found that "[Appellants] understood it as such, and took a calculated business risk, when they moved forward with the Penn Security loan." *Id.* Further, the court found the testimony regarding the discussions "vague and contradictory." TCO, 4/13/2016, at 4. The trial court concluded that the representations were not misstatements of fact intended to induce Appellants to borrow money from Penn Security Bank or to act to their detriment. TCO, 4/13/2016, at 6-7.

Based on the evidence presented and the trial court's findings, Appellants failed to establish the elements necessary to support a cause of

_____

[8] Appellants' claim is akin to a claim of fraud in the inducement. The trial courts commonly apply the parol evidence rule to bar the admission of extrinsic evidence of an oral promise made prior to or contemporaneous with an Agreement that allegedly induced a party to enter into it when the court finds that the agreement was fully integrated. *See Kehr Packages*, 710 A.2d at 1174-75; *see also Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. 2005) ("The rationale for this rule of law is that a party cannot justifiably rely upon prior oral representations and then sign a contract containing terms that refute the alleged prior oral representations.").

action for promissory estoppel. Specifically, Appellants failed to prove that the alleged promise was reasonably expected to induce reliance or that Appellants took action based on the purported promise. Accordingly, we discern no legal error or abuse of the trial court's discretion in dismissing this claim.

Appellants' negligent misrepresentation claim also fails.

> Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. …[T]he misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another.

*Milliken v. Jacono*, 60 A.3d 133, 141 (Pa. Super. 2012) (emphasis in original) (citations omitted), *aff'd*, 103 A.3d 806 (Pa. 2014), as modified on reconsideration (Nov. 12, 2014).

The trial court made the following findings: (1) the alleged misrepresentations were not material to the 2011 Penn Security loan transaction; (2) Misterman specifically encouraged Appellants to seek legal counsel on this issue for a more definitive answer; (3) Appellants were familiar with prepayment penalty provisions based on past experiences; (4) Appellants took a calculated business risk when they moved forward with the terms of the loan; and (5) what actually induced Appellants to enter into the

Agreement with Penn Security was a burning desire to finance their new venture, not their desire to avoid the prepayment penalty. TCO, 4/18/2016, at 7; TCO, 7/28/2016, at 3, 7.

Based on the trial court's findings, Appellants failed to establish by a preponderance of the evidence the elements necessary to sustain a cause of action for negligent misrepresentation. In particular, the court found that Appellants did not establish by a preponderance of the evidence that the alleged misrepresentations induced them to enter into the Agreement. Accordingly, we discern no abuse of the trial court's discretion or error of law in dismissing this claim.

Appellants' claim for indemnification also fails. In order to assert a right to indemnification, the party must generally establish an underlying right to indemnification. *See McClure v. Deerland Corp.*, 585 A.2d 19, 22 (Pa. Super. 1991) (noting that such a right includes the legal issue of the scope of the indemnification agreement). An action for indemnity is an action at law for damages based on breach of contract. *Id.* at 23 (citing *Allegheny Plastics v. Stuyvesant Ins. Co.*, 200 A.2d 775 (1964)).

Appellants' indemnification claim is based on Wukich's own testimony that Best said he or Penn Security would "take care" of the prepayment penalty. *See* Appellants' Br. at 18. The court found Best's testimony more credible than Wukich's and noted that Wukich conceded on cross-examination that he never discussed the penalty with Best. *See* TCO,

4/13/2016, at 3-4. Based on the trial court's findings, the purported oral promise of indemnity was not credible. Moreover, we find that Wukich's self-serving testimony does not establish an implied oral agreement for indemnity and that Appellants presented no evidence of a written indemnification agreement to support their claim. **See McClure**, **supra**. Accordingly, we discern no legal error or abuse of the trial court's discretion in rejecting this claim.

Next, we will address issues six and nine. Appellants present a single argument with regard to these issues in their brief. First, they contend that the trial court erred in finding the final Penn Security loan closing documents fully integrated. **See** Appellants' Br. at 19. They argue that Appellees failed to meet their burden in showing that the Agreement was fully integrated at trial. **See id.** at 20 (citing in support **Kehr Packages, Inc. v. Fidelity Bank, Nat. Ass'n**, 710 A.2d 1169, 1173 (Pa. Super. 1998)). Second, Appellants suggest that the court erred in applying the parol evidence rule. **See id.** According to Appellants, parol evidence was admissible "to explain and supplement a written agreement where such evidence shows the writing in question was not intended to, or did not state the entire agreement between the parties." **See id.** at 19-20.

> [O]ur standard of review regarding a challenge to the admissibility of evidence is very narrow; we will only reverse a ruling of the trial court if there is an abuse of discretion or error of law. The parol evidence rule states that, absent fraud, accident, or mistake, parol evidence of a prior or contemporaneous oral agreement is not admissible to alter,

vary, modify, or contradict terms of a contract which has been reduced to an integrated written instrument.

***Kehr Packages***, 710 A.2d at 1172 (internal citations omitted).

"[B]efore the parol evidence rule is applied, the court must determine, as a matter of law, whether the writing at issue is an integrated agreement."

***Kehr Packages***, 710 A.2d at 1173 (citation omitted). "A written contract is 'integrated' if it represents a final and complete expression of the parties' agreement." ***Id.*** at 1173. To determine if an agreement is a final expression, the court must assess the text to determine the completeness of the written agreement that the oral statement purportedly modifies. ***See id.*** at 1173-74.

> [W]e are mindful that typically, in cases such as this, 'where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject.' ***Gianni v. R. Russell & Co., Inc.***, 126 A. 791 (Pa. 1924) (landmark case discussing parol evidence rule). Further, it is well established that parol evidence of a contemporaneous oral agreement is inadmissible if the subject of such agreement would naturally and normally have been included in the writing between the parties. ***Gemini Equipment [v. Pennsy Supply***, 595 A.2d 1211, 1215 (Pa. Super. 1991)], (stating that 'parol evidence is not admissible to show an agreement which normally is found in the written instrument.'). *Therefore, if the written agreement and the alleged oral agreement 'relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the [oral] agreement must be taken to be covered by the writing.'* ***Gianni***, 126 A. at 792.

***Kehr Packages***, 710 A.2d at 1174 (emphasis added).[9]

Although Appellees requested application of the parol evidence rule several times, the record indicates that the trial court denied Appellees' motions and declined to apply the parol evidence rule. ***See, e.g.,*** Notes of Testimony (N.T.), 12/4/2015, 409. [10] Contrary to Appellants' contention, all testimonial and documentary evidence appears to have been factored into the trial court's decision. Thus, we reject the premise of Appellants' allegation of error.

Here, the court's ruling was not based on application of the parol evidence rule, but rather on a credibility assessment of the extrinsic

---

[9] In ***Kehr Packages***, the bank appealed from the entry of a judgment in favor of the plaintiffs for breach of contract, promissory estoppel, negligent misrepresentation, and tortious interference with a contract arising out of an alleged oral agreement made during the course of settlement of a credit agreement. ***Kehr Packages***, 710 A.2d at 1171-72. On appeal, the bank argued that the evidence concerning an oral agreement or modification made during the course of settlement was barred by the parol evidence rule. ***Id.*** at 1172. The parties signed multiple interrelated documents at the time of settlement and the final agreement did not contain an integration clause. Notwithstanding, the Superior Court found the credit agreement in that case was a fully integrated contract because the contents of the alleged oral agreement and credit agreement "relate to the same subject-matter and are greatly interrelated." ***Id.*** This Court reversed the trial court since the alleged oral promise was "the type of thing that would natural and normally have been contained in the written [c]redit [a]greement." ***Id.*** at 1174.

[10] Appellees filed two pre-trial motions in limine to preclude testimony barred by the parole evidence rule, which the trial court denied. In addition, Appellees moved to dismiss all claims based on the parol evidence rule after the evidence was presented at trial. ***See*** N.T., 12/4/2015, at 405-409. Throughout, it was Appellees position that the Agreement constituted a final expression of Penn Security's obligations in the loan transaction.

evidence offered in support of a collateral legal obligation created by an oral promise.  The court found the parol evidence not credible to support a separate, legally enforceable oral promise to cover the prepayment penalty. *See* TCO, 4/13/2016, at 6.

Nevertheless, Appellants argue that the court erred in finding the Agreement fully integrated because the Agreement does not contain an integration clause and references other loan documents.[11]  Appellants' argument is without merit because it is well-established that the absence of an integration clause does not preclude the trial court from finding an agreement to be fully integrated.  *See Kehr Packages*, 710 A.2d at 1173 (reasoning that an agreement need not contain an integration clause if the written instrument represents the final expression of the parties' agreement).

Here, the trial court found that "the final written loan agreement between Penn Security and [Appellants] contains no mention of NexTier's prepayment penalty, and this agreement embodies the entire agreement of the parties."  TCO, 4/13/2016, at 7.  Here, the Agreement clearly manifests the intentions and obligations of both parties by specifying, *inter alia*, the

_____

[11] Notably, Appellants do *not* assert that the Agreement fraudulently omitted any term, such as the alleged promise to cover the prepayment penalty, from the Agreement, nor do they assert that this omission was a mistake. Specifically, Appellants claim that the court failed to consider the board memorandum.  *See* Appellants' Br. at 20-21.  We address this claim, *infra*.

amount of the term loan, calculation of interest, payment provisions, and Appellants' obligations. Applying the **Kehr Packages** test summarized above, the court did not err in finding the Agreement fully integrated.

Furthermore, although the trial court did not apply the parol evidence rule to exclude evidence, it would have been proper to do so. In this case, the alleged oral promise to "cover" a prepayment penalty of over $200,000.00 would naturally and normally have been incorporated into the terms of the loan and the parties' integrated Agreement. **See Kehr Packages**, 710 A.2d at 1174. Thus, pursuant to **Kehr Packages**, the parol evidence rule was applicable. Accordingly, Appellants are not entitled to relief and we affirm the denial of a new trial on this ground. **See Williams**, 704 A.2d at 135.

Next, we will address issues seven, ten, and fourteen, in which Appellants claim that they are entitled to a new trial based on the allegations that the court failed to consider various pieces of evidence. **See** Appellants' Br. at 21-23.

In issue seven, Appellants contend that the court failed to consider the memorandum to Penn Security's board of directors. The memorandum proposed a complicated loan structure and then stated "[t]his structure is being used to avoid a significant prepayment penalty." **See** Appellants' Br. at 23 (citing Trial Ex. 5, p. 4). According to Appellants, this memorandum evidenced that the purpose of the loan agreement was to avoid the

prepayment penalty.

This memorandum was prepared two months before execution of the Agreement for the purpose of informing Penn Security's board about the proposed loan transaction. The memorandum did not establish any independent legal obligation of Penn Security to Appellants. Because the court found that any legal obligations were established by the fully integrated Agreement, the court did not err in failing to consider the board memorandum to the extent that it related to matters addressed in the final written Agreement entered into by the parties. **See Kehr Packages**, 710 A.2d at 1174-75.

Contrary to Appellants' argument, the trial court found that "the primary purpose of the new financing was to finance the new project, not to avoid a fee." **See** TCO, 4/13/2016, at 7. Even if the memorandum was admissible to explain certain terms of the parties' Agreement, the memorandum itself is not binding on Penn Security or Appellants in any manner. Thus, we defer to the findings of the trial court and we discern no abuse of discretion.

In issue ten, Appellants assert that the court failed to consider evidence that they did not have an opportunity to review the loan documents before closing. Appellants' Br. at 22 (citing N.T. at 80-83). They maintain that such evidence supported their claim for fraud in the execution. **See id.**

Our review of the record reveals that Appellants mischaracterize the notes of testimony cited in their brief. Misterman testified that the loan documents were redrafted several times. *See* N.T. at 81. Misterman forwarded the final version for Appellants to review prior to closing. *See id*. He testified that Appellants "were in a hurry to close, [Penn Security and its officers] were trying to accommodate their schedule." *See id.* The actual closing lasted approximately two hours. *Id.* at 83-84. Misterman also denied promising to take care of the NexTier penalty at closing. *See id.* at 85-86. According to the factfinder:

> [Appellants] were moving full steam ahead, and Daniel J. admitted that even if they had been advised by lenders that they would have to pay the penalty in order to pay off the existing NexTier loan, they still would have gone ahead with the new project.

*See* TCO, 4/13/2016, at 5-6 (noting that Appellants had also obtained building permits prior to securing the necessary financing).

Based on our review of the record, Appellants had sufficient time to review the loan closing documents. As a matter of law, Appellants bore the risk of any mistake resulting from their failure to include alleged oral statements at closing into the final agreement.[12] Accordingly, no relief is due.

_____

[12] *See, e.g., Step Plan Services, Inc. v. Koresko*, 12 A.3d 401, 411 (Pa. Super. 2010) (quoting RESTATEMENT (SECOND) CONTRACTS § 154: When A Party Bears the Risk of a Mistake).

In issue fourteen, Appellants contend that the court failed to consider testimony regarding the loan options Appellants had discussed with other banks before entering into the Agreement with Penn Security. *See* Appellants' Br. at 22 (citing N.T. at 295-296). Appellants suggest that they entered the Agreement with Penn Security based on an alleged arrangement to avoid the prepayment penalty, despite their "other options." Their argument is unconvincing in light of the factfinder's conclusion that Appellants decided to work with Penn Security based on their relationship with Best. *See* TCO, 4/13/2016, at 5 ("When [Appellants] were frustrated in their attempts to work with NexTier on obtaining financing for the new project, they turned to Best, who they had kept apprised of the situation."). As the trial court's findings are supported by the record, *see, e.g.,* N.T. at 201, we discern no abuse of discretion. Accordingly, no relief is due.

Next, we will address issues eleven, twelve, and sixteen. Appellants combined these issues under a single subheading in their brief, in which they assert that the trial court erred in concluding that the Penn Security loan of $7,121,628.69 was sufficient to cover the principal amount and the prepayment penalty. *See* Appellants' Br. at 23. Appellants claim that they are entitled to relief in the form of JNOV or, in the alternative, a new trial. *See id.*

In reviewing the trial court's denial of JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence

to sustain the verdict, drawing all inferences in a manner favorable to the verdict winner. *See V-Tech Services, Inc. v. Street*, 72 A.3d 270, 275 (Pa. Super. 2013) ("If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.") (citations omitted)).

The trial court acknowledged that it had made a numerical mistake in its opinion dated June 28, 2016,[13] however, the court reasoned that this was harmless error and noted that "this fact is inconsequential in the overall scheme of things." Trial Ct. Op., 7/28/2016, at 1, 3. We agree. Moreover, Appellants make no effort to explain how a contrary finding would affect the verdict on any specific claim. Thus, Appellants are not entitled to relief. Accordingly, we affirm the trial court's denial of JNOV and a new trial.

Finally, we will address Appellants' fifteenth and seventeenth issues, which they discuss under a single argument heading in their brief. *See* Appellants' Br. at 23-24. Appellants contend that the court erred in "in

---

[13] The correct payoff amount was indicated in a letter NexTier Bank sent to Appellants dated March 29, 2011. *See* Trial Ct. Op., 7/28/2016, at 2. The correct payoff amount for the notes and loan, including the penalty, was $7,334,198.75. *See id*. The trial court adhered to its prior ruling on the basis that the $7.1 million loan from Penn Security was relatively close to the amount of *principal* amount due, $7,121,628.69, before the prepayment penalty was imposed. *See id.* at 2-3 (noting that this amount was "only a few dollars short (in relative terms) of the proceeds" of the Penn Security loan).

placing undue reliance on the self-serving testimony of Craig Best" and request relief in the form of a new trial. *See id.* Our standard of review to a challenge based on the weight of the evidence is as follows.

> A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. An appellant is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way.

*Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1252 (Pa. Super. 2008) (citations and quotation marks omitted).

> Ordinarily, '[i]t is well established that the credibility of witnesses is an issue to be determined by the trier of fact. On appeal this Court will not revisit the trial court's determinations ... regarding the credibility of the parties. Thus, [an] argument, which would require this Court to revisit and essentially reverse the [trial court] on his credibility determinations, provides no grounds for relief.'

*Stephan v. Waldron Elec.*, 100 A.3d 660, 667 (Pa. Super. 2014) (quoting *Woods v. Cicierski*, 937 A.2d 1103, 1105 (Pa. Super. 2007)).

In this section, Appellants merely contend that the court improperly weighted Best's testimony. The only contradictory evidence they point to is the board memorandum, which we have addressed *supra*. As discussed above, it is not the role of the appellate court to weigh credibility of the evidence presented at trial on appeal. *Stephan*, 100 A.3d at 667. We defer to the findings in the court's ruling as they are supported by the record and therefore, they will not be disturbed. Accordingly, no relief is due.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/8/2017