J-S49002-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| GEORGE J. MORGAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A. FROST, INC., D/B/A FROST & CO. | : | No. 538 WDA 2020 |
| DIAMONDS | : | |

Appeal from the Order Entered March 11, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  AR-19-5649

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                          FILED JANUARY 21, 2021

Appellant, George J. Morgan, appeals from the March 11, 2020 order

sustaining the preliminary objections filed by A. Frost, Inc. d/b/a Frost & Co.

Diamonds ("Frost") and dismissing Appellant's amended complaint with

prejudice.[1]  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court's order sustaining Frost's preliminary objections in the nature
of a demurrer and dismissing the amended complaint with prejudice is a final
order for purposes of appeal without resorting to the filing of exceptions or
reducing the order to a judgment.  See U.S. Nat'l Bank in Johnstown v.
Johnson, 487 A.2d 809, 814 (Pa. 1985).  Appellant's notice of appeal was
filed on April 28, 2020, more than 30 days after entry of the order sustaining
the preliminary objections and dismissing Appellant's amended complaint with
prejudice.  See Pa.R.A.P. 903(a) (stating, "the notice of appeal . . .  shall be
filed within 30 days after the entry of the order from which the appeal is
taken").  In a Second Supplemental Order entered on April 1, 2020, our
Supreme Court, however, suspended "all time calculations for purposes of

The trial court summarized the factual history as follows:

[Appellant] claims that on November 4, 2015, he put a $3,500[.00] down[-]payment on a diamond at [Frost's] jewelry store. [Appellant] signed an invoice[,] which provided that the diamond was being sold to [Appellant] for [$12,529.70] and that [Appellant] paid a deposit of $3,500[.00]. Also, to complete the purchase, [Appellant was required to] pay the remaining balance of $9,029.70. Finally, the invoice expressly provided[,] "no cash refunds, store credit only". Within a few days [of signing the invoice, Appellant] changed his mind about this particular diamond. [Frost] was unable to find a diamond that met [Appellant's] specifications. Four years later, [Appellant] filed [a] complaint seeking $3,500[.00 in damages]. [Appellant] allege[d] extrinsic evidence regarding the terms of the agreement.

Trial Court Opinion, 6/16/20, at unnumbered pages 1-2 (extraneous capitalization omitted).

The record demonstrates that on November 15, 2019, Appellant filed a complaint, alleging causes of action for violation of the Unfair Trade Practices and Consumer Protection Law,[2] breach of contract, breach of express warranty, and unjust enrichment and seeking $3,500.00 in damages.[3] Frost filed preliminary objections, and Appellant subsequently filed an amended

_____

time computation relevant to court cases or other judicial business, as well as time deadlines" through April 30, 2020, due to the COVID-19 pandemic. See In re General Statewide Emergency, Judicial Docket Nos. 531 and 532, Second Supplemental Order, 4/1/20. Appellant's appeal of the final order, therefore, was timely filed on April 28, 2020.

[2] 73 P.S. §§ 201-1 to 201-10.

[3] A review of Appellant's amended complaint demonstrates that Appellant is seeking relief in the form of, inter alia, a cash refund of his deposit.

complaint on January 9, 2020, again setting forth the aforementioned causes of action.  Thereafter, Frost filed preliminary objections in the nature of a demurrer to Appellant's amended complaint, arguing, inter alia, that Appellant failed to state a claim upon which relief could be granted because the parol evidence rule barred Appellant from introducing evidence of alleged verbal representations that varied from the terms set forth in the sales invoice.  Frost further maintained that Appellant was not entitled to a cash refund of his deposit pursuant to the terms of the sales invoice.  After entertaining argument on the parties' respective positions on March 11, 2020, the trial court sustained Frost's preliminary objections and dismissed Appellant's amended complaint with prejudice.  This appeal followed.

Appellant raises the following issues for our review:

1. Whether the trial court erred in [sustaining Frost's] preliminary objections, as a matter of law, when it found that the simple and attenuated invoice and receipt for the purchase of the diamond constituted the full and final agreement contemplated by the parties, thus barring parol evidence and dismissing []Appellant's claims with prejudice?

2. Whether the trial court erred in [sustaining Frost's] preliminary objections, as a matter of law, when it found that statements made by [Frost], both oral and written, and the subsequent actions by [Frost] did not constitute a modification and waiver to the terms of the invoice and receipt under the Pennsylvania Commercial Code, thus barring parol evidence of the same and dismissing []Appellant's claims with prejudice?

3. Whether the trial court erred in dismissing []Appellant's breach of contract claim with prejudice where[,] regardless of the applicability of the parol evidence rule, [Frost] nevertheless failed to materially perform its duties under the

invoice to provide a diamond or extend store credit to [Appellant]?

Appellant's Brief at 2-3.

Appellant, in sum, challenges the trial court's order sustaining Frost's preliminary objections. In reviewing an order disposing of preliminary objections, our standard of review is well-settled. This Court reviews an order sustaining, or overruling, preliminary objections for an error of law and in so doing, must apply the same standard as the trial court. Haun v. Community Health Sys., Inc., 14 A.3d 120, 123 (Pa. Super. 2011) (citation omitted).

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

Id. (citation and quotation marks omitted).

Appellant's first issue challenges the trial court's conclusion that the invoice was a full and final integrated written agreement between the parties that barred, under the parol evidence rule, the introduction of extrinsic evidence to prove additional terms not present in the written sales invoice. Appellant's Brief at 15.

In explaining the parol evidence rule, our Supreme Court has stated,

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations[,] and verbal agreements are merged in and superseded by the subsequent written contract and unless fraud, accident[,] or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (ellipsis omitted), citing, *Gianni v. Russell & Co.*, 126 A. 791 (Pa. 1924). In order for the parol evidence rule to apply, the writing must represent the entire contract between parties. *Yocca*, 854 A.2d at 436 (citation omitted).

> To determine whether or not a writing is the parties' entire contract, the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement, it is conclusively presumed that the writing represents the whole engagement of the parties. An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.

*Id.* (quotation marks, ellipsis, and brackets omitted). The absence of an integration clause, however, "does not automatically subject the written agreement to parol evidence." *Kehr Packages, Inc. v. Fidelity Bank, Nat'l Ass'n*, 710 A.2d 1169, 1173 (Pa. Super. 1998) (citation omitted). "Rather, in the absence of an integration clause, the court must examine the text of the agreement to determine its completeness." *Id.* (citation, original quotation marks, and brackets omitted). Parol evidence may not be received

where the subject of the extrinsic evidence is referred to in a writing, and the writing, which includes, inter alia, an invoice for the sale of goods, is found to be the complete agreement between the parties. Knirnschild v. Pittsburgh Brewing Co., 1369 A.2d 316, 319 (Pa. 1957).

A contract for the sale of goods is governed by Article 2 of the Uniform Commercial Code, as adopted in Pennsylvania. Allegheny Energy Supply Co. v. Wolf Run Mining Co., 53 A.3d 53, 62 (Pa. Super. 2012), appeal denied, 69 A.3d 599 (Pa. 2013); see also 13 Pa.C.S.A. §§ 2101-2725. Section 2201(a) of the Pennsylvania Uniform Commercial Code, Article 2, Sales ("PA-UCC") requires that a contract for the sale of goods for a price of $500.00 or greater must be reduced to "some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought" in order to be enforceable. 13 Pa.C.S.A. § 2201(a). "A contract is formed when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity." Company Image Knitware, Ltd. v. Mothers Work, Inc., 909 A.2d 324, 330 (Pa. Super. 2006) (citation and original quotation marks omitted), appeal denied, 929 A.2d 645 (Pa. 2007). "Interpreting the terms of a contract is a question of law, thus implicating a de novo standard of review and a plenary scope of review." Commonwealth by Shapiro v. UPMC, 188 A.3d 1122, 1132 (Pa. 2018) (citation omitted). "Where the terms of the contract are unambiguous, they are deemed to reflect the intent of the parties." Id. at 1131 (citation omitted). "Extrinsic evidence

may be employed to ascertain the meaning of contractual terms only when they are ambiguous, i.e., subject to more than one reasonable interpretation." Id. at 1132.

Here, Appellant contends that the sales invoice was "essentially a receipt for [Appellant's] deposit" and did not constitute a "fully integrated written agreement between the parties." Appellant's Brief at 17. Appellant argues that "the parol evidence rule should not apply[] because there was no fully integrated written agreement" between the parties. Id. (internal quotation marks omitted). Appellant asserts that the "lack of an integration clause strongly militates toward a finding that [the sales invoice] was not a fully integrated agreement." Id. at 18. Appellant contends that the sales invoice was not a fully integrated agreement but, rather, "merely prevented the sale of that diamond" to another of Frost's customers. Id. at 19-20. The sales invoice, Appellant maintains, evidenced the deposit that he made in order for Frost to hold that diamond in its inventory while Frost attempted to acquire a different diamond that was certified by the Gemological Institute of America ("GIA").[4] Id. The deposit was to be applied toward Appellant's subsequent purchase of the GIA-certified diamond, once it was located. Id.

_____

[4] We take judicial notice that,

> GIA's commitment to protecting diamond buyers inspired the
> Institute to create the Diamond 4Cs [(carat weight, color grade,
> clarity grade, and cut grade)] and the International Diamond

The trial court found that the sales invoice "was a full and final integrated written agreement between the parties" because the sales invoice "provided a description of the diamond, the total cost, the deposit amount, [Appellant's] signature[,] and the words 'no cash refunds store credit only.'" Trial Court Opinion, 6/16/20, at unnumbered pages 2-3. Therefore, the trial court concluded that Appellant was prohibited from introducing parol evidence to substantiate his causes of action and that, pursuant to the terms of the contract, he failed to state a claim upon which the relief he seeks could be granted. Id.

The record demonstrates that on November 4, 2015, Appellant signed a Frost sales invoice (invoice number 54641) for the purchase of a diamond. See Appellant's Amended Complaint, 1/9/20, at Exhibit C. The sales invoice described the diamond as a 1.85-carat diamond with a round, brilliant cut, a clarity of "SI2", and the color classification of "E" (colorless). Id. The sales invoice further identified the diamond by the number "3412167125." Id. The total cost of the diamond was $12,529.70. Id. The sales invoice showed that Appellant paid a deposit of $3,500.00 towards the purchase of the diamond, and the balance due was $9,029.70. Id. On the line above Appellant's

---

Grading System™. These methods are the universal benchmarks by which all diamonds are judged.

See https://4cs.gia.edu/en-us/about-gia/ (last visited 12/15/20).

signature, the sales invoice stated, "No Cash Refunds – Store Credit Only". Id.

We concur with the trial court that the sales invoice, as a matter of law, represented the fully integrated written agreement between Appellant and Frost, in which Frost agreed to sell Appellant a specific diamond and Appellant agreed to purchase that diamond for a set purchase price. In consideration for Frost's promise to sell the diamond, Appellant paid a deposit to be applied towards the full purchase price of the diamond. The sales invoice delineated the terms of their bargained-for agreement, including the term that no cash refunds would be given, and that only store credit would be provided if the agreement were terminated. The sales invoice portrayed a complete statement of contractual terms and the trial court correctly considered it a fully integrated written agreement between the parties. Absent an averment of fraud, accident, or mistake, Appellant was not entitled to offer parol evidence of alleged oral conversations or written correspondence that deviated from the terms set forth in the sales invoice. See Yocca, 854 A.2d at 436.

A review of Appellant's amended complaint demonstrates that Appellant averred,

> 11. On November 4, 2015, [Appellant] visited the store and [Frost's employee] showed him a 1.85[-]carat diamond that was not GIA certified, however the diamond was very close to [the] color, clarity, carat, and cut that [Appellant] was looking for. The cost of the diamond was $12,529.70, reasonably within [Appellant's] $10,000.00 to $12,000.00 price range.

12. At this November 4, 201[5] visit, [Frost's employee] informed [Appellant] that he could not guarantee that he could hold [] the diamond in inventory for much longer, and that if [Appellant] wanted to ensure that the diamond would be kept in [Frost's] inventory, then [Appellant] would have to pay a $3,500.00 deposit.

13. Prior to, contemporaneously, and subsequently with [Appellant's] deposit, [Frost's employee] guaranteed that [Frost] was going to obtain a diamond within [Appellant's] previously stated specifications and price range, and if [Appellant] chose not to purchase this specific diamond, then [Appellant] would be entitled to a cash refund [of] the deposit. These terms and conditions formed the basis of [Appellant's] and [Frost's] bargain.

14. [Appellant], [Frost's employee], and [Appellant's] nephew[] were present when [Frost's employee] and [Appellant] entered into an oral agreement to put a $3,500.00 cash refundable deposit on the diamond so that [Frost] would hold [] the diamond in inventory and obtain a diamond within [Appellant's] specifications and price range.

15. After [Frost's employee's] guarantee, [Appellant] paid the $3,500.00 [] deposit on November 4, 201[5], and received a receipt[,] as well as an invoice[,] for the deposit on the diamond. []

16. This invoice does not represent a full and final expression of the terms and conditions of [Appellant's] agreement with [Frost] nor does the invoice contain an integration clause.

17. Indeed, the very next day, on November 5, 2015, [Appellant] emailed [Frost's employee] explaining to him that [Appellant] would not be purchasing the diamond that [Frost's employee] showed [Appellant] on November 4, 201[5], and specified that he was again looking for a diamond that [was] two carats, with a color grade of "E" or "F", and with a clarity grade of "SI1"[.]

Appellant's Amended Complaint, 1/9/20, at ¶¶ 11-17.

In finding the absence of an averment of fraud, accident, or mistake in the amended complaint, the trial court stated,

> The [amended] complaint alleges that [Appellant paid] a deposit on the diamond and [Frost] issued an invoice which stated[,] "no cash refunds store credit only". [Appellant] signed the invoice and then later changed his mind. The invoice clearly states that [Appellant] was not entitled to a cash refund.

Trial Court Opinion, 6/16/20, at unnumbered page 3 (extraneous capitalization omitted).

We concur with the trial court that Appellant's averments do not give rise to allegations of fraud, accident, or mistake in Appellant's execution of the sales invoice and agreement to purchase the diamond specified therein. The parol evidence rule, therefore, bars reliance upon extrinsic evidence to support Appellant's causes of action. It is axiomatic that if Appellant took steps to terminate the agreement to purchase the diamond via electronic mail on November 5, 2015, Appellant understood at the time he signed the sales invoice that he had entered an agreement to purchase that diamond. See Appellant's Amended Complaint, 1/9/20, at ¶ 17. Pursuant to the terms of the sales invoice, which Appellant executed, if Appellant changed his mind on the purchase of the diamond identified therein, he was entitled to a store credit, and not a cash refund, of any money paid towards the purchase of that diamond. Consequently, Appellant's first issue is without merit.

In his second issue, Appellant contends that the trial court erred in finding that the oral and written statements made by Frost's employee, as well as the subsequent actions by the employee to locate a GIA-certified diamond did not constitute a modification and waiver of the terms of the sales invoice. Appellant's Brief at 24-26.

Section 2209 of the PA-UCC, in pertinent part, states

§ 2209. Modification, rescission and waiver

. . .

(b) Writing excluding modification or rescission.--A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(c) Compliance of modified contract with statute of frauds.--The requirements of section 2201 (relating to formal requirements; statute of frauds) must be satisfied if the contract as modified is within its provisions.

(d) Ineffective modification or rescission as waiver.-- Although an attempt at modification or rescission does not satisfy the requirements of subsection (b) or (c) it can operate as a waiver.

13 Pa.C.S.A. § 2209(b)-(d).

Appellant argues, in the alternative, that if the sales "invoice contractually bound [Appellant] to purchase the diamond described therein, [the electronic mail] and oral statements [made by Frost's employee] operated as a contractual waiver" and modification of the terms of the agreement. Appellant's Brief at 23-24. Relying on Section 2209(d) of the PA-UCC, Appellant contends, "[Frost's employee] expressly agreed to search for a GIA-certified diamond, in lieu of the diamond identified in the [sales] invoice, which constituted both [] a modification [of the terms of] the [sales] invoice and a waiver" of Appellant's obligation to purchase the diamond specified on the sales invoice. Id. at 24. Appellant asserts that the parol

- 12 -

evidence rule does not apply to the doctrine of waiver, under Section 2209(d), and the evidence establishes Frost's intent to waive the terms of the invoice, specifically releasing [Appellant] from purchasing the non-GIA certified diamond identified in the sales invoice. Id.

In support of his causes of action, Appellant relied on the electronic correspondence between Appellant and Frost's employee, as well as alleged oral statements made prior to Appellant's execution of the sales invoice. As discussed supra, evidence of electronic mail and alleged oral statements made prior to Appellant executing the sales invoice on November 4, 2015, is barred by the parol evidence rule because the sales invoice represented the entire written agreement between the parties. Therefore, Appellant cannot rely on this parol evidence to demonstrate a modification of the agreement, or a waiver of its terms.

On November 5, 2015, Appellant notified Frost that he was terminating the agreement to purchase the diamond specified in the sales invoice. The parol evidence rule is not applicable to the electronic mail and alleged oral statements made by Frost's employee after Appellant terminated the agreement. See Yocca, 854 A.2d 425, 436 (stating, the parol evidence rule applies to evidence of previous oral or written statements or agreements involving the same subject matter as the written contract). Because Appellant terminated the original agreement on November 5, 2015, evidence of oral and written statements made after the termination on November 5, 2015, could only explain Appellant's reason for terminating the agreement or explain his

ongoing objective to purchase a GIA-certified diamond. Moreover, because the oral and written statements occurred after the termination of the original agreement, they could not be used to modify or invalidate the terms of the fully integrated, and now terminated, agreement. Appellant's second issue, therefore, is without merit.

In his third issue, Appellant claims the trial court erred in sustaining Frost's preliminary objections and dismissing, with prejudice, Appellant's breach of contract claim because the allegations demonstrated that Frost failed to materially perform its duties, pursuant to the sales invoice, by providing the diamond specified in the sales invoice or extending Appellant store credit. Appellant's Brief at 30-31.

This Court recently reiterated,

> It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and, (3) resultant damages.

Kelly v. Carman Corp., 229 A.3d 634, 653 (Pa. Super. 2020) (citation brackets omitted).

As discussed supra, the terms of the agreement, as delineated in the sales invoice, required Appellant to purchase a 1.85-carat diamond for a purchase price of $12,529.70. If Appellant changed his mind about the purchase, no cash refunds of money paid towards the purchase would be provided and only store credit would be issued. Pursuant to the written agreement, Frost agreed and Appellant accepted the term of store credit if the

transaction were not completed. By including the statement, "No Cash Refunds – Store Credit Only" on the sales invoice, Appellant and Frost agreed that any money paid towards the purchase of the diamond, and therefore, due as a refund upon termination of the agreement, would be returned to Appellant in the form of store credit and not a cash refund. Appellant is not obligated to purchase the 1.85-carat diamond identified in the November 4, 2015 sales invoice because he terminated the agreement. Appellant, however, is entitled only to a store credit of his deposit money and not a cash refund per the terms of the agreement.[5]

Appellant, in his amended complaint, pleaded a cause of action for breach of contract seeking the refund of his $3,500.00 deposit in cash. See Appellant's Amended Complaint, 1/9/20, at ¶¶ 26, 37-44. Pursuant to the terms of the parties' agreement, Appellant is not entitled to a cash refund of his deposit since Frost never promised to refund his deposit in cash. Appellant, therefore, failed to state a claim upon which the relief he seeks could be granted. We find no abuse of discretion or error of law in the trial court's order sustaining Frost's preliminary objections in the nature of a demurrer and dismissing Appellant's breach of contract claim, as framed, with prejudice.

Order affirmed.

_____

[5] Frost concedes that Appellant is entitled to a store credit in the amount of $3,500.00. See Frost's Renewed Preliminary Objection, 1/28/20, at 3 ¶9.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/21/2021